UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

In re:                                              Case No. 26-40805-lsg

South Town by 4M LLC,                               Chapter 11

Debtor.                                             Hon. Lisa S. Gretchko

_____/


**COVER SHEET FOR MOTION TO USE CASH
COLLATERAL OR TO OBTAIN CREDIT**

Debtor, South Town By 4M, LLC, has filed a motion to use cash collateral or to obtain postpetition financing through its *Motion for Entry of an Order (a) Authorizing The Debtor to Obtain Post-Petition Secured Financing; and (b) Granting Liens, Security Interests, and Superpriority Claim* (the "Motion") which is attached to this Cover Sheet. In accordance with LBR 4001-2(b) (E.D. Mich.), the Debtor has identified below, by page and paragraph number, the location in the Interim Order accompanying the Motion of each of the following provisions:

| Provision | Contained in Proposed Order | Location in Proposed Order |
|---|---|---|
| (1) Provisions that grant liens on the estate's claims and causes of action arising under Chapter 5 of the Code. | _____ Yes<br>___**X**__ No | Page ____, ¶ ____ |

| | | |
|---|---|---|
| (2) Provisions that grant cross-collateralization protection to the prepetition secured creditor (i.e., clauses that secure prepetition debt with categories of collateral that were not covered by the secured party's lien prepetition) other than liens granted solely as adequate protection against diminution in value of a prepetition creditor's collateral. | _____ Yes<br>___**X**__ No | Page ____, ¶ ____ |
| (3) Provisions that establish a procedure or conditions for relief from the automatic stay. | _____ Yes<br>___**X**__ No | Page ____, ¶ ____ |
| (4) Provisions regarding the validity or perfection of a secured creditor's prepetition liens or that release claims against a secured creditor. | _____ Yes<br>__**X**__ No | Page ____, ¶ ____ |
| (5) Provisions that prime any lien without that lienholder's consent. | _____ Yes<br>__**X**__ No | Page ____, ¶ ____ |
| (6) Provisions that relate to a sale of substantially all of the debtor's assets. | _____ Yes<br>__**X**__ No | Page ____, ¶ ____ |
| (7) Provisions for the payment of professional fees of the debtor or any committees, including any carve-outs for such payments. | _____ Yes<br>__**X**__ No | Page ____, ¶ ____ |

| | | |
|---|---|---|
| (8) Provisions for the payment of prepetition debt. | _____ Yes<br><br>__**X**__ No | Page ____, ¶ ____ |
| (9) Provisions that waive the debtor's exclusive right to file or solicit acceptances of a plan during the time periods specified in 11 U.S.C. § 1121. | _____ Yes<br><br>__**X**__ No | Page ____, ¶ ____ |
| (10) Provisions that require the debtor's plan to be on terms acceptable to the secured creditor. | _____ Yes<br><br>__**X**__ No | Page ____, ¶ |
| (11) Provisions that require or prohibit specific terms in the debtor's plan. | _____ Yes<br><br>__**X**__ No | Page ____, ¶ |
| (12) Provisions establishing that proposing a plan inconsistent with the order constitutes a default. | _____ Yes<br><br>__**X**__ No | Page ____, ¶ |
| (13) Provisions that waive surcharge under 11 U.S.C. § 506(c). | _____ Yes<br><br>__**X**__ No | Page ____, ¶ ____ |
| (14) Provisions that address the rights and obligations of guarantors or co-obligors. | _____ Yes<br><br>__**X**__ No | Page ____, ¶ ____ |
| (15) Provisions that prohibit the debtor from seeking approval to use cash collateral without the secured creditor's consent. | _____ Yes<br><br>__**X**__ No | Page ____, ¶ ____ |
| (16) Provisions that purport to bind a subsequent trustee. | _____ Yes<br><br>__**X**__ No | Page ____, ¶ ____ |

| | | |
|---|---|---|
| (17) Provisions that obligate the debtor to pay any of a secured creditor's professional fees. | __**X**__ Yes<br>_____ No | Page 5, ¶ 11 |

**TAFT STETTINIUS & HOLLISTER LLP**

/s/ *Jay Welford_____*
Jay L. Welford (P34471)
Kimberly Ross Clayson (P69804)
Anthony Cimini (P86223)
27777 Franklin Road, Suite 2500
Southfield, Michigan 48034
(248) 351-3000
jwelford@taftlaw.com
kclayson@taftlaw.com
acimini@taftlaw.com

Dated: April 9, 2026          *Counsel to the Debtor, South Town by 4M LLC*

In re:                                                    Case No. 26-40805-lsg

South Town by 4M LLC,                                     Chapter 11

Debtor.                                                   Hon. Lisa S. Gretchko

_____/

## MOTION FOR ENTRY OF AN ORDER (A) AUTHORIZING THE DEBTOR TO OBTAIN POST-PETITION SECURED FINANCING; AND (B) GRANTING LIENS, SECURITY INTERESTS, AND SUPERPRIORITY CLAIM

The Debtor, South Town by 4M LLC (the "Debtor" or "Debtor in Possession"), for its *Motion for Entry of an Order (a) Authorizing The Debtor to Obtain Post-Petition Secured Financing; and (b) Granting Liens, Security Interests, and Superpriority Claim* (the "Motion") states as follows:

### PRELIMINARY STATEMENT

Through this Motion, the Debtor requests entry of an interim order (the "Interim Order") substantially in the form attached hereto as **Exhibit A,** seeking authority to borrow up to $400,000 to: (a) enable the Debtor to make payments to County National Bank ("CNB") consistent with the requirements of Section 362(d)(3) of the Bankruptcy Code, in lieu of filing a plan of reorganization (the "Plan") on or prior to April 27, 2026; and (b) to have available the additional funds

that may be necessary to facilitate execution of the Debtor's Plan and the exit-financing associated therewith, all as specified in the budget (the "Budget"), attached hereto as **Exhibit B**.

## JURISDICTION

1.      This Court has jurisdiction over this Motion pursuant to 28 U.S.C. § 1334. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).

2.      Venue is proper under 28 U.S.C. §§ 1408 and 1409.

3.      The statutory basis for the relief requested herein is sections 105, 362, 363, 364, and 507 of Title 11 of the United States Code, 11 U.S.C. §§ 101–1330, as amended (the "Bankruptcy Code"), Rule 4001 and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Local Bankruptcy Rule 4001-2 (Bankr. E.D. Mich.).

## PROCEDURAL BACKGROUND

4.      On January 27, 2026 (the "Petition Date"), the Debtor filed a voluntary petition for relief in this Court under chapter 11 of the Bankruptcy Code.

5.      The Debtor continues to manage and operate its business as the Debtor-in-possession pursuant to section 1184 of the Bankruptcy Code.

6.      Heidi Poscher, Personal Representative of the Estate of the Debtor's sole Member—Margaret Poscher (Deceased)—is the responsible person for the Debtor.

7. The Declaration of Heidi Poscher attesting to the accuracy of the facts set forth and in support of the Motion, is attached hereto as **Exhibit C**.

8. No creditors' committee has been appointed.

9. On February, 13 2026, CNB filed its *Motion to Designate Case as a Single Asset Real Estate Case* (the "SARE Motion") [ECF No. 33].

10. On February 27, 2026, the Debtor filed its *Objection to County National Bank's Motion to Designate Case as a Single Asset Real Estate Case* (the "Objection") [ECF No. 51]. CNB filed a reply to the Objection and on March 12, 2026, the Court thereafter heard arguments on the SARE Motion, granted the Motion, and entered its *Order Granting Motion to Designate Case as a Single Asset Real Estate Case* (the "SARE Order") [ECF No. 65].

11. As a result of the SARE Order and pursuant to requirements of Section 362(d)(3) of the Bankruptcy Code, the Debtor must either file its Plan by April 27, 2026 or commence making non-default interest rate payments to its secured lenders by such date.

12. The Debtor has elected to commence making the non-default interest rate payments, in lieu of filing its Plan, as the Plan terms and associated financing are still in process.

13. To facilitate the payment to CNB, the Debtor seeks authority to obtain post-petition financing consisting of a superpriority, secured (but subordinate to any

valid liens of record), multiple-draw term loan in an amount not to exceed the aggregate principal amount of $400,000.00 (the "DIP Loan" and the obligations owing thereunder being the "DIP Obligations") as set forth in the promissory note attached as **Exhibit D** (the "DIP Note").

## FACTUAL BACKGROUND

14. The Debtor is a Michigan limited liability company, with a single member. The member, until mid-October of 2025 had been Margaret Poscher. Margaret Poscher unfortunately passed away at that time and a probate estate has been opened. Margaret Poscher's wife, Heidi Poscher has been named as the personal representative of Margaret Poscher's estate and therefore is acting on behalf of the sole member of the Debtor in this bankruptcy proceeding.

15. The Debtor holds title to ten individual lots, comprising a city block in Ann Arbor, Michigan. One side fronts on South State Street, directly across from the University of Michigan Golf Course and is kiddy corner to the University of Michigan field hockey stadium, the football practice facilities, Crisler Arena and the University of Michigan football Stadium.

16. The Debtor has site plan approval for the construction of a multi-faceted long-term and short term rental apartment building, with dedicated retail space and a self-supporting micro-grid, all of which this Court has intimate familiarity with by virtue of the SARE Motion (the "Development").

17. To aid in the Debtor's acquisition of the ten lots, the Debtor obtained financing from three lenders; CNB, which claims to hold a first lien position in the approximate amount of $17 million; and Brownstone Realty Advisors, LLC ("Brownstone") which claims to hold a second lien position in the amount of $8 million. A third mortgage position for an additional $8.5 million is claimed to be held by an affiliate of the Debtor, Prentice Partners of Ann Arbor, LLC ("Prentice").

18. Since the Petition Date, the Debtor has been engaged in aggressive on-going discussions with various lenders who can provide financing sufficient to pay all allowed claims in full and allow the Debtor to exit bankruptcy (the "Exit Financing"). Current negotiations are productive, with term sheet and proposals in circulation as of the date of filing of this Motion. The DIP Loan is necessary to bridge the Debtor to Exit Financing and a confirmable Plan.

19. In connection with the Section 362(d)(3) payments, both Brownstone and Prentice have waived any requirement that the Debtor provide interest-only payments pending confirmation of the Debtor's Plan. Therefore, the DIP Loan is required solely to cover the required Section 362(d)(3) payments due to CNB and other potential development expenses that may be required in connection with the Exit Financing, as set forth in the Budget.

## RELIEF REQUESTED

20. Through this Motion, the Debtor seeks the entry of an Interim Order,

substantially in the form attached hereto as Exhibit A, authorizing the Debtor incur the DIP Loan on an interim basis pending a final hearing.

21. The DIP Loan is comprised of the following principal terms[1]:

(a) DIP Loan. The post-petition financing is to be provided to the Debtor by Heidi Caroline Poscher (the "DIP Lender") consisting of a loan in an amount not to exceed the aggregate principal amount of $400,000.00, memorialized in the DIP Note (the "DIP Obligations").

(b) Collateral. The DIP Loan shall be collateralized (the "DIP Collateral"):

(i) pursuant to section 364(c)(2) of the Bankruptcy Code, by valid, enforceable, fully-perfected, non-avoidable, automatically and properly perfected first priority senior liens on and security interests in all unencumbered property of the Debtor whether existing on the petition date or thereafter acquired, including, without limitation, all Debtor's right, title and interest in and to all unencumbered assets and property of the Debtor and Debtor's estate, whether acquired pre-petition or post-petition, and the proceeds, products, rents and profits thereof, whether arising from section 552(b) of the Bankruptcy Code or otherwise, including, without limitation, all of the following to the extent unencumbered: cash, if any, (and any investment of such cash) of the Debtor; all equipment, all goods, all accounts, cash, payment intangibles, bank accounts, and other deposit or securities accounts of the Debtor (including any accounts opened prior to, on, or after the Petition Date) to the fullest extent permitted under applicable law; all insurance policies and proceeds thereof; equity interests, instruments, intercompany claims, accounts receivable, other rights to payment, all general intangibles, all contracts and contract rights, securities, investment property,

---

[1] Reference should be made to *Exhibit A* for the exact terms of the proposed financing order; the following is a summary of certain of its key provisions.

letters of credit and letter of credit rights, chattel paper; all owned real estate, real property leaseholds and fixtures of the Debtor; patents, copyrights, trademarks, trade names, rights under license agreements and other intellectual property of the Debtor; all claims and causes of action; and any and all proceeds, products, rents, and profits of all of the foregoing; provided, for the avoidance of doubt, and notwithstanding anything to the contrary contained herein, to the extent a lien cannot attach to any of the foregoing pursuant to applicable law, the liens granted pursuant to the Interim Order shall attach to the Debtor's economic rights, including, without limitation, any and all proceeds of all of the foregoing; and

(ii)    pursuant to section 364(c)(3) of the Bankruptcy Code, valid, enforceable, fully-perfected, non-avoidable, automatically and properly perfected junior liens on, and security interests in, all tangible and intangible pre-petition and post-petition property of the Debtor that is subject to valid, enforceable, properly perfected, non-avoidable security interests, mortgages or liens in existence as of the Petition Date, if any; provided that nothing herein shall limit the rights of the DIP Lender to the extent such liens are not permitted thereunder or otherwise not entitled to priority under applicable law (including applicable contract law).

(c)    Superpriority status. Pursuant to section 364(c)(1) of the Bankruptcy Code, all of the DIP Obligations shall constitute allowed claims against the Debtor with priority over any and all administrative expenses, diminution claims and all other claims against the Debtor (other than existing liens of record), now existing or hereafter arising, of any kind whatsoever, including, without limitation, all administrative expenses of the kind specified in sections 503(b) and 507(b) of the Bankruptcy Code, and over any and all administrative expenses or other claims arising under sections 105, 326, 328, 330, 331, 503(b), 506(c), 507(a), 507(b), 726, 1113 or 1114 of the Bankruptcy Code, whether or not such expenses or claims may become secured by a judgment lien or other non-consensual lien, levy or attachment, which allowed claims shall be payable from and have recourse

to all pre-petition and post-petition property of the Debtor and their estate and all proceeds thereof.

(d)  Draw Amount.  The Debtor shall be entitled to request draws (the "Draws") on the DIP Loan for all reasonable and necessary expenses identified in the Budget. Pending the final  hearing on this Motion, the Debtor will seek Draws not to exceed the amount necessary to make the first required section 362(d)(3) payment to CNB, estimated to not exceed $133,000.00 (the "Interim Draw Amount").

(e)  Interest. The non-default interest rate on the DIP Loan shall be seven (7) percent and the default interest rate shall be nine (9) percent.

(f)  Event of Default. The occurrence of any of the following shall, at the option of the DIP Lender, constitute a "DIP Event of Default":

(i)  The Debtor does not pay on the due date any amount payable pursuant to any of the DIP Note or the order approving the same, at the place and in the amount required to be paid.

(ii)  The Debtor does not comply with any provision of the DIP Note or the Interim Order or any Final Order entered in this Bankruptcy Case.

(iii)  Any representation, warranty or statement made or given or deemed to be made or given by the Debtor in the DIP Note, the Interim Order or any Final Order entered in this Bankruptcy Case or any other document delivered by or on behalf of the Debtor under or in connection with the DIP Note is or proves to have been incorrect or misleading in any material respect when made or deemed to be made.

(iv)  Any post-petition indebtedness of the Debtor to any party is declared to be or otherwise becomes due and payable before its specified maturity.

(v)     Any creditor of the Debtor becomes entitled to declare any indebtedness of the Debtor due and payable before its specified maturity as a result of an event of default (however described) and receives relief from stay to exercise its remedies.

(vi)    It is or becomes unlawful for the Debtor to perform any of its obligations under the DIP Note or the Interim Order or any Final Order entered in this Bankruptcy Case.

(vii)   The Debtor repudiates the DIP Note or evidences an intention to repudiate the DIP Note or the Interim Order or any Final Order entered in this Bankruptcy Case.

(viii)  The DIP Note or the order approving the same is not (or is claimed by the Debtor not to be) in full force and effect.

(ix)    The holder of any lien on any of the assets of the Debtor receives relief from stay to commence or attempt to commence any enforcement or remedy with respect to any such assets.

(x)     This Court shall enter any order(s) (i) amending, reversing, revoking, supplementing, altering, staying, vacating, rescinding or otherwise modifying the Interim Order or any order with respect to this Bankruptcy Case affecting in any material respect the DIP Note, (ii) appointing a Chapter 11 trustee or an examiner in the case with enlarged powers relating to the operation of the business of the Debtor pursuant to section 1104 of the Bankruptcy Code, (iii) dismissing this Bankruptcy Case or converting this Bankruptcy Case to a case under Chapter 7 of the Bankruptcy Code, or (iv) granting relief from the automatic stay for a lien on the assets of the Debtor to permit any foreclosure upon any of the DIP Collateral or assets of the estate.

(xi)    Any order(s) is entered by this Court approving a motion filed in this Bankruptcy Case approving any superpriority claims in this Bankruptcy Case which are *pari passu* with or senior

to the claims of the DIP Lender against the Debtor unless after giving effect to the transactions contemplated by such motion, all of the DIP Obligations (as defined in the DIP Note) shall be either (i) senior in all respects, or (ii) indefeasibly paid in full in cash in their sole discretion.

(xii) Any motion shall be filed by the Debtor in the Bankruptcy Case (i) seeking to obtain additional financing under section 364 of the Bankruptcy Code without the consent of the DIP Lender that is not subordinate to the rights and remedies of the DIP Lender hereunder or, in the alternative, does not provide for the indefeasible and immediate repayment of the DIP Obligations in cash at the closing of such new financing, (ii) subject to the entry of the Final Order, to recover from any portion of the DIP Collateral any costs or expenses of preserving or disposing of such DIP Collateral under section 506(c) of the Bankruptcy Code, or (iii) to take any other action or actions adverse to rights and remedies of the DIP Lender hereunder or under the DIP Note or the Interim Order or any Final Order entered in this Bankruptcy Case

(xiii) The Debtor fails to be in compliance with any item on the Budget for any applicable period.

(xiv) The Debtor materially fails to comply with any performance and reporting covenants contained in the Interim Order or any Final Order entered in this Bankruptcy Case, the DIP Note, or breaches any provision of the Interim Order or any Final Order entered in this Bankruptcy Case or the DIP Note.

(xv) Any material breach of the Debtor's governance documents.

(xvi) If an order is entered dismissing this Bankruptcy Case which does not contain a provision for payment in full in cash of all DIP Obligations of the Interim Order or any Final Order entered in this Bankruptcy Case or the DIP Note; or

(xvii) Any representation or warranty given to the DIP Lender in connection with the DIP Note and/or the Draws shall have

been misleading or incorrect in any material respect as of the time when the same shall have been made.

(g) <u>Acceleration</u>. All DIP Obligations shall be immediately due and payable and all commitments to extend credit under the DIP Note shall terminate the earlier of: (i) a DIP Event of Default or (ii) the date that is one hundred twenty (120) days after the entry of the Interim Order (the "<u>Termination Date</u>"), unless the Termination Date is extended by written stipulation of the DIP Lender, and the Debtor or further order of this Court.

(h) <u>Remedies</u>. Upon the occurrence and continuation of a monetary DIP Event of Default or an uncured non-monetary DIP Event of Default, following the DIP Lender providing three (3) days' written notice, which shall be provided via email to the Debtor, all secured creditors, and to the United States Trustee, subject to compliance with any order approving the DIP Loan, all of the DIP Obligations shall become immediately due and payable, without any further demand, notice, further order of this Court or legal process of any kind, and the DIP Lender shall file a motion with this Court seeking emergency relief for further order of this Court modifying the automatic stay in this Bankruptcy Case to permit the DIP Lender to exercise any and all rights and remedies against the Debtor and/or the DIP Collateral as provided herein, in the DIP Note, the Uniform Commercial Code ("<u>UCC</u>"), and other applicable law, or otherwise, including but not limited to:

(i) file any action or proceeding which the DIP Lender may deem necessary or appropriate to protect and preserve the right, title and interest of the DIP Lender in the DIP Collateral;

(ii) apply all sums received or collected from or on account of the DIP Collateral, including the proceeds of any sales thereof, to the payment of the costs and expenses incurred in preserving and enforcing rights of the DIP Lender, including but not limited to reasonable attorneys' fees and legal expenses, and DIP Obligations secured by the DIP Collateral, in such order and manner as the DIP Lender in its sole discretion determines; and

(iii) exercise any other rights or remedies available to the DIP Lender under the Interim Order, the UCC, the DIP Note, the Bankruptcy Code, applicable law, equity or otherwise.

## ARGUMENT

22. Section 364 of the Bankruptcy Code allows a debtor to obtain credit or incur debt by either: (a) obtaining unsecured credit in the ordinary course of business; (b) obtaining unsecured credit outside the ordinary course of business; or (c) obtaining credit with specialized priority or on a secured basis. *See* 11 U.S.C. § 364. Here, the Debtor seeks to obtain secured credit structured as the DIP Loan with (i) superpriority administrative status; (ii) junior lien status on encumbered estate assets; and (iii) first lien status on unencumbered estate assets, as allowed under section 364(c). 11 U.S.C. § 364 (c)(1), (2), and (3).

23. Despite extensive effort, the Debtor has been unable to obtain financing on more favorable terms from sources other than the DIP Lender under the DIP Note, and is unable to obtain adequate unsecured credit allowable under section 503(b)(1) of the Bankruptcy Code as an administrative expense. As such, the Debtor seeks the authority to obtain the superpriority, secured post-petition financing in the form of the DIP Loan.

24. The ability for a debtor to enter into post-petition financing arrangements under section 364 of the Bankruptcy Code is governed by the business

judgment standard. *See In re Ames Dep't Stores, Inc.*, 115 B.R. 34, 40 (Bankr. S.D.N.Y. 1990) ("[C]ases consistently reflect that the court's discretion under section 364 is to be utilized on grounds that permit reasonable business judgment to be exercised so long as the financing agreement does not contain terms that leverage the bankruptcy process and powers or its purpose is not so much to benefit the estate as it is to benefit parties in interest."); *see also In re Farmland Indus., Inc.*, 294 B.R. 855, 881 (Bankr. W.D. Mo. 2003) (noting that approval of post-petition financing requires, inter alia, an exercise of "sound and reasonable business judgment"); *In re Ryan Int'l Airlines, Inc.,* 2010 WL 11834046 at \*11 (Bankr. N.D. Ill. Dec. 9, 2010) ("Provided that a the Debtor's business judgment does not run afoul of the provisions of, and policies under the Bankruptcy Code, Courts grant the Debtor considerable deference in acting in accordance therewith.") (relying on *In re Ames*, 115 B.R., *et al.*).

25. The terms of the DIP Note are fair and reasonable, reflect the Debtor's exercise of prudent business judgment consistent with its fiduciary duties, and the DIP Obligations constitute reasonably equivalent value and fair consideration.[2]

26. The Debtor is unable to fund the progress on the Development as it has no current operations or streams of revenue. Absent authority to obtain the DIP

---

[2] Any terms not defined in the Motion shall have the meaning assigned to them in the Interim Order attached hereto as Exhibit A.

Loan, the Debtor will not be able to cover costs necessary to preserve assets of the estate, obtain Exit Financing, and confirm its Plan.

27. The DIP Lender is a statutory insider of the Debtor. *See* 11 U.S.C. § 101(31)(B) ("if the Debtor is corporation (iii) person in control of the Debtor"). The DIP Lender is the responsible person for, and in control of, the Debtor. While section 364 does not impose a different statutory standard for insider lenders, Sixth Circuit precedent and bankruptcy jurisprudence require heightened scrutiny of transactions involving insiders. *See In re Autostyle Plastics, Inc.*, 269 F.3d 726 (6th Cir. 2001) (business dealings between the Debtor and an insider must be scrutinized more rigorously by the courts); *see also In re Harvey Goldman Co.*, 2011 Bankr. LEXIS 3149 (Bankr. E.D. Mich. Aug. 24, 2011) ("[a]n insider is one who has a sufficiently close relationship with the Debtor that his conduct is made subject to closer scrutiny than those dealing at arm's length with the Debtor.") (citations omitted).

28. The good faith requirement under section 364(e) is particularly relevant when the lender is an insider. *See In re Grand Valley Sport and Marine*, 143 B.R. 840, 848 (Bankr. W.D. Mich. 1992) ("A bankruptcy court must make an explicit good faith finding at the time of the postpetition financing hearing to afford a postpetition lender protection under § 364(e)."). Section 364(e) protects the validity of post-petition financing authorized by the court, even if the authorization is later reversed or modified on appeal, provided the lender extended credit in good faith.

*See id.*

29.     The DIP Note has been negotiated in good faith, in furtherance of the Debtor's fiduciary duties, based on the terms of the DIP Note, which represent an arm's length and reasonable loan arrangement among the Debtor and the DIP Lender, at a clearly below-market rate of interest for similar loans in the marketplace. The Debtor has been unsuccessful in obtaining post-petition funding from Brownstone, Prentice or any other third-party (proposed exit financer or equity participant). As set forth in more detail in the DIP Order, and to ensure all rights, remedies, privileges, and benefits granted under section 364(e) are extended the DIP Lender, no later reversal or modification of the DIP Loan, the DIP Note, or any DIP Obligation shall have any effect on the validity or enforceability of same.

30.     The Debtor requests entry of the DIP Order in accordance with Bankruptcy Rule 4001(b)(2), 4001(c)(2), and Local Rule 4001-2. Absent granting the relief set forth therein, the Debtor's estate will be immediately and irreparably harmed. Consummation of the DIP Note in accordance with the proposed Interim Order is therefore in the best interest of the Debtor's estate.

31.     Notice of the Motion has been provided to the United States Trustee, and the other parties in interest entitled to notice.

32.     Based on the Foregoing, Debtor respectfully requests that the Court enter the Interim Order, and that such Interim Order be effectively immediately upon

entry pursuant to Bankruptcy Rule 6004. The Debtor submits that immediate relief is necessary to avoid irreparable harm to the Debtor's estate, as the Debtor's ability to immediately make the Interest-Only Payments to CNB with the approaching deadline under 362(d)(3), preserves the value of its estate, which would be lost if the automatic stay were lifted and CNB foreclosed on its interest, to the detriment of all creditors of Debtor's estate.

WHEREFORE, the Debtor respectfully requests that the Court: (i) enter the Interim Order; (ii) waive the stay of for any period, immediately granting the relief requested in this Motion: (iii) and grant any additional relief as is just and equitable under the circumstances.

Respectfully submitted,

**TAFT STETTINIUS & HOLLISTER LLP**

/s/ *Jay Welford*_____
Jay L. Welford (P34471)
Kimberly Ross Clayson (P69804)
Anthony Cimini (P86223)
27777 Franklin Road, Suite 2500
Southfield, Michigan 48034
(248) 351-3000
jwelford@taftlaw.com
kclayson@taftlaw.com
acimini@taftlaw.com

Dated: April 9, 2026          *Counsel to the Debtor, South Town by 4M LLC*

# EXHIBIT A

## Interim Order

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

In re:                                          Case No. 26-40805-lsg

South Town by 4M LLC,                            Chapter 11

Debtor.                                          Hon. Lisa S. Gretchko

_____/

**INTERIM ORDER GRANTING DEBTOR'S MOTION FOR
ENTRY OF AN ORDER (A) AUTHORIZING THE DEBTOR TO OBTAIN
POST-PETITION SECURED FINANCING; AND (B) GRANTING
LIENS, SECURITY INTERESTS, AND SUPERPRIORITY CLAIM**

This matter having come before the Court on South Town by 4M LLC's (the "Debtor" or "Debtor in Possession"), *Motion for Entry of an Order (a) Authorizing the Debtor to Obtain Post-Petition Secured Financing; and (b) Granting Liens, Security Interests, and Superpriority Claim* (the "Motion"), seeking, among other things, entry of an interim order (the "Interim Order") authorizing the Debtor, to obtain post-petition financing, notice having been given, oral argument having been heard, and it appearing to the Court as follows;

A.    A multi-draw term loan, in an amount not to exceed $400,000 is proposed to be provided to the Debtor by Heidi Caroline Poscher ("Poscher" or the "DIP Lender"), as evidenced by a promissory note, in the form attached to the Motion as **Exhibit D** (the "DIP Note");

B.      Pending a final hearing on the Motion, an interim draw of $133,000 is being requested (the "Interim Draw");

C.      The Debtor is seeking authority to execute the DIP Note and to incur all obligations owing thereunder (the "DIP Obligations");

D.      The proceeds of the DIP Note are proposed to be used in accordance with the budget attached as **Exhibit B** to the Motion (the "Budget");

E.      The Debtor is seeking authorization for the DIP Lender to take all commercially reasonable actions to implement and effectuate the terms of this Interim Order;

F.      In connection with the advances to be made, the DIP Lender is seeking the grant of valid, enforceable, non-avoidable, automatically and fully perfected security interests, liens and a superpriority administrative claim, including (i) an allowed superpriority administrative expense claim pursuant to sections 364(c)(1) and 507(b) of the Bankruptcy Code and (ii) liens pursuant to sections 364(c)(2), 364(c)(3) and 364(d)(1) of the Bankruptcy Code in the DIP Collateral (as defined herein) and all proceeds thereof, including, without limitation, all property constituting "Cash Collateral," as defined in section 363(a) of the Bankruptcy Code, to secure all DIP Obligations, subject only to any prior liens thereon;

G.      In granting the relief herein, the Debtor is seeking the waiver of any applicable stay (including under Bankruptcy Rule 6004) and providing for

immediate effectiveness of this Interim Order and, upon entry, a final order (the "Final Order"); and

H.      The Debtor is seeking the scheduling of a final hearing (the "Final Hearing") to be held no later than thirty (30) days following entry of this Interim Order to consider entry of the Final Order approving, on a final basis, the relief requested in the Motion, and to approve the DIP Note on a final basis.

**NOW, THEREFORE, BASED ON THE FOREGOING, IT IS HEREBY FOUND, DETERMINED, ORDERED AND ADJUDGED, that:**

1.      This Court has jurisdiction over this Bankruptcy Case, the Motion, and the parties and property affected hereby pursuant to 28 U.S.C. §§ 157(b) and 1334. Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

2.      The Interim Hearing was held pursuant to the authorization of Bankruptcy Rule 4001. Notice of the Interim Hearing was provided on_____, to all creditors of the Debtor's estate. The notice given of the Motion and the Interim Hearing constitutes due and sufficient notice thereof and complies with Bankruptcy Rules 4001(b) and (c) and the Local Rules of this Court. No further notice of the relief sought at the Interim Hearing and the relief granted herein is necessary or required.

3.      The Motion is granted on an interim basis in accordance with the terms of this Interim Order. Any objections to the Motion with respect to the entry of this

Interim Order that have not been withdrawn, waived or settled, and all reservations of rights included therein, are hereby denied and overruled.

4. The Debtor is hereby authorized to borrow money in an aggregate principal amount of up to the amount of the Interim Draw prior to entry of a Final Order pursuant to the terms and conditions governing the DIP Note (in each case plus interest, fees, and other expenses and amounts provided by the DIP Note and this Interim Order), which borrowings shall be used for all purposes permitted by the DIP Note and this Interim Order, including, without limitation, pursuant to the Budget, to provide for payment of adequate protection to County National Bank ("CNB"), ongoing working capital for the Debtor and other operational needs in accordance with this Interim Order and the DIP Note.

5. Good and sufficient cause has been shown for the entry of this Interim Order and the interim relief granted herein is necessary to avoid immediate and irreparable harm to Debtor and its estate pending the Final Hearing.

6. The Debtor has an immediate and critical need to obtain financing pursuant to the DIP Note in order to provide, among other things, adequate protection to CNB in order to allow the Debtor sufficient time to formulate its plan of reorganization (the "Plan") and to cover costs necessary to preserve assets of its estate.

7. The Debtor is unable to obtain financing on more favorable terms from sources other than the DIP Lender under the DIP Note and is unable to obtain adequate unsecured credit allowable under section 503(b)(1) of the Bankruptcy Code as an administrative expense.

8. The Debtor is unable to obtain secured credit allowable under sections 364(c)(1), 364(c)(2) and 364(c)(3) of the Bankruptcy Code without the Debtor granting to the DIP Lender the DIP Liens and the Superpriority Claim (as defined herein) under the terms and conditions set forth in this Interim Order and in the DIP Note.

9. The terms of the DIP Note are fair and reasonable, reflect the Debtor's exercise of prudent business judgment consistent with its fiduciary duties, and the DIP Obligations constitute reasonably equivalent value and fair consideration.

10. The DIP Note has been negotiated in good faith, in furtherance of the Debtor's fiduciary duties, based on the terms of the DIP Note, which represent a reasonable loan arrangement among the Debtor and the DIP Lender.

11. All of the Debtor's indebtedness and obligations owing to the DIP Lender, including the priority thereof, arising under, in respect of or in connection with the DIP Note, including, without limitation: (i) the DIP Note; (ii) obligations under the DIP Note, and to pay the DIP Lender's reasonable fees and expenses, including but not limited to its professional fees (all of the foregoing in clauses

(i) and (ii) collectively, the "<u>DIP Obligations</u>"); and (iii) any liens and security interests and the priority thereof granted by this Interim Order and the DIP Note, are hereby be deemed to have been extended by the DIP Lender in good faith, as that term is used in section 364(e) of the Bankruptcy Code and in express reliance upon the protections offered by section 364(e) of the Bankruptcy Code, and the DIP Lender shall be entitled to the full protection of section 364(e) of the Bankruptcy Code in the event that this Interim Order or any provision hereof is vacated, reversed or modified, on appeal or otherwise.

12. The Debtor has requested entry of this Interim Order pursuant to Bankruptcy Rules 4001(b)(2) and 4001(c)(2). Absent granting the relief set forth in this Interim Order, the Debtor's estate will be immediately and irreparably harmed. Consummation of the DIP Note in accordance with this Interim Order and other governing documents is therefore in the best interests of the Debtor's estate.

13. The Debtor is hereby authorized to execute, deliver, enter into and, as applicable, perform all of its obligations under the DIP Note and such other and further acts as may be necessary, appropriate or desirable in connection with and subject to the terms, conditions and limitations of this Interim Order. In furtherance of the foregoing and without further approval of this Court, the Debtor is authorized and directed to perform all acts, to make, execute and deliver all instruments and documents related to the performance of the DIP Obligations under the DIP Note.

14.     Upon the Debtor's execution and delivery of the DIP Note, the DIP Note and the DIP Obligations shall constitute valid, binding and unavoidable obligations of the Debtor, enforceable against Debtor in accordance with the terms thereof and of this Interim Order. No obligation, payment, transfer or grant of security under the DIP Note or this Interim Order shall be stayed, restrained, voidable, or recoverable under the Bankruptcy Code or under any applicable law (including without limitation, any claim or cause of action under sections 502(d), 544, 545, 547, 548, 549, 550 and 551 of the Bankruptcy Code, or any other avoidance actions under the Bankruptcy Code (collectively, "Avoidance Actions") or under any applicable Uniform Fraudulent Transfer Act, Uniform Fraudulent Conveyance Act or other similar state statute or common law), or subject to any defense, reduction, setoff, recoupment, recharacterization, subordination, disallowance, impairment, cross-claim or counterclaim.

15.     Pursuant to section 364(c)(1) of the Bankruptcy Code, all of the DIP Obligations shall constitute allowed claims against Debtor with priority over any and all administrative expenses, diminution claims and all other claims against Debtor (other than existing liens of record), now existing or hereafter arising, of any kind whatsoever, including, without limitation, all administrative expenses of the kind specified in sections 503(b) and 507(b) of the Bankruptcy Code, and over any and all administrative expenses or other claims arising under sections 105, 326, 328, 330,

331, 503(b), 506(c), 507(a), 507(b), 726, 1113 or 1114 of the Bankruptcy Code (the "Superpriority Claims"), whether or not such expenses or claims may become secured by a judgment lien or other non-consensual lien, levy or attachment, which allowed claims shall be payable from and have recourse to all pre-petition and post-petition property of the Debtor and its estate and all proceeds thereof.

16.     As security for the DIP Obligations, effective and perfected upon entry of this Interim Order and without the necessity of the execution, recordation of filings of mortgages, security agreements, control agreements, pledge agreements, financing statements or other similar documents, or the possession or control by the DIP Lender of, or over, any DIP Collateral (as defined herein), the following security interests and liens are hereby granted to the DIP Lender (all property identified in clauses (a) - (d) below being collectively referred to as the "DIP Collateral"), subject, in all instances, to Permitted Third Party Liens[3] (all such liens and security interests granted to the DIP Lender pursuant to this Interim Order and the DIP Note, the "DIP Liens"):

(a)     Pursuant to section 364(c)(2) of the Bankruptcy Code, valid, enforceable, fully-perfected, non-avoidable, automatically and properly perfected

_____

[3] "Permitted Third Party Liens" shall mean (i) any liens that are senior by operation of law (including liens securing the payment of real property taxes and any such liens that are perfected subsequent to the Petition Date as permitted by Bankruptcy Code Section 546(b)).

first priority senior liens on and security interests in all unencumbered property of the Debtor whether existing on the Petition Date or thereafter acquired, including, without limitation, all Debtor's right, title and interest in and to all unencumbered assets and property of the Debtor and Debtor's estate, whether acquired pre-petition or post-petition, and the proceeds, products, rents and profits thereof, whether arising from section 552(b) of the Bankruptcy Code or otherwise, including, without limitation, all of the following to the extent unencumbered: cash, if any, (and any investment of such cash) of the Debtor; all equipment, all goods, all accounts, cash, payment intangibles, bank accounts, and other deposit or securities accounts of the Debtor (including any accounts opened prior to, on, or after the Petition Date) to the fullest extent permitted under applicable law; all insurance policies and proceeds thereof; equity interests, instruments, intercompany claims, accounts receivable, other rights to payment, all general intangibles, all contracts and contract rights, securities, investment property, letters of credit and letter of credit rights, chattel paper; all owned real estate, real property leaseholds and fixtures of the Debtor; patents, copyrights, trademarks, trade names, rights under license agreements and other intellectual property of the Debtor; all claims and causes of action; and any and all proceeds, products, rents, and profits of all of the foregoing; provided, for the avoidance of doubt, and notwithstanding anything to the contrary contained herein, to the extent a lien cannot attach to any of the foregoing pursuant to applicable law,

the liens granted pursuant to this Interim Order shall attach to the Debtor's economic rights, including, without limitation, any and all proceeds of all of the foregoing;

(b) Pursuant to section 364(c)(3) of the Bankruptcy Code, valid, enforceable, fully-perfected, non-avoidable, automatically and properly perfected junior liens on, and security interests in, all tangible and intangible pre-petition and post-petition property of the Debtor that is subject to valid, enforceable, properly perfected, non-avoidable security interests, mortgages or liens in existence as of the Petition Date, if any; provided that nothing herein shall limit the rights of the DIP Lender under the DIP Note to the extent such liens are not permitted thereunder or otherwise not entitled to priority under applicable law (including applicable contract law);

(c) All such security interests provided in this Interim Order shall be created and perfected automatically pursuant to this Interim Order and the DIP Note;

(d) Notwithstanding the foregoing, the DIP Collateral shall exclude those assets as to which the DIP Lender determines in its sole and absolute discretion that the granting of a security interest in such assets would be prohibited by contract or applicable law unless such prohibition is not effective under applicable law; and

(e) Any terms (whether capitalized or lower case) used herein that are defined in the Uniform Commercial Code (the "UCC") shall be construed and defined as set forth in the UCC unless otherwise defined herein; provided that to the

extent that the UCC is used to define any term used herein and if such term is defined differently in different articles of the UCC, the definition of such term contained in Article 9 of the UCC shall govern.

17.     The DIP Lender shall have no obligation to make any loan under the DIP Note unless all of the conditions precedent to the making of such loan under the DIP Note and this Interim Order, as applicable, have been satisfied in full or waived by the DIP Lender in accordance with the terms of the DIP Note.

18.     From and after the Petition Date, the Debtor shall use proceeds of borrowings under the DIP Note only for the purposes specifically set forth in this Interim Order, and, in each case, in a manner consistent with the Budget and the terms and conditions in this Interim Order.

19.     Following the giving of three (3) days' prior written notice delivered by email (or other electronic means) to the Debtor and counsel for the Debtor, with a copy to counsel for all other secured creditors of record and to the United States Trustee, (the "Default Notice Period"), during such time in which the Debtor shall be allowed to cure any Event of Default, the DIP Lender shall be entitled to an expedited hearing on whether the automatic stay provisions of section 362 of the Bankruptcy Code should be vacated and modified to the extent necessary to permit the DIP Lender to enforce all of its rights under the DIP Note and this Interim Order and to exercise all rights and remedies thereunder and hereunder.  Notwithstanding

the foregoing, during the Default Notice Period, the Debtor shall only be permitted to use the DIP Note proceeds to fund such payments as are agreed to in writing by the DIP Lender  prior to the expenditure of said funds.

20.     The DIP Lender reserves all rights to seek a waiver under section 506(c) of the Bankruptcy Code in connection with the Final Order providing for, among other things, that no expenses of administration of this Bankruptcy Case or any future proceeding that may result therefrom, including liquidation in bankruptcy or other proceedings under the Bankruptcy Code, shall be charged against or recovered from the DIP Collateral, without the prior written consent of the DIP Lender, and no such consent shall be implied from any other action, inaction, or acquiescence by the DIP Lender. For the avoidance of doubt, such waiver under section 506(c) of the Bankruptcy Code is not granted pursuant to this Interim Order.

21.     The DIP Lender is hereby authorized, but not required, to file or record (and to execute in the name of the Debtor, as their true and lawful attorney, with full power of substitution, to the maximum extent permitted by law) financing statements, trademark filings, copyright filings, mortgages, deeds of trust, notices of lien or similar instruments in any jurisdiction, or take possession of or control over assets, or take any other action, in each case in order to validate and perfect the liens and security interests granted to it hereunder. Whether or not the DIP Lender, in its sole discretion, chooses to file such financing statements, trademark filings,

copyright filings, mortgages, deeds of trust, notices of lien or similar instruments, or take possession of or control over, or otherwise confirm perfection of the liens and security interests granted hereunder, such liens and security interests shall be deemed valid, perfected, allowed, enforceable, non-avoidable and not subject to challenge, dispute or subordination at the time and date of the entry of this Interim Order.

22. A certified copy of this Interim Order may, in the discretion of the DIP Lender, be filed with or recorded in filing or recording offices in addition to or in lieu of such financing statements, mortgages, deeds of trust, notices of lien or similar instruments, and all filing offices are hereby authorized to accept such certified copy of this Interim Order for filing and recording. For the avoidance of doubt, the automatic stay of section 362(a) of the Bankruptcy Code shall be modified to the extent necessary to permit the DIP Lender to take all actions, as applicable, referenced in this paragraph and in the immediately preceding paragraph.

23. Any provision of any lease or other license, contract or other agreement that requires (i) the consent or approval of one or more landlords or other parties or (ii) the payment of any fees or obligations to any governmental entity, in order for Debtor to pledge, grant, sell, assign, or otherwise transfer any such leasehold interest, or the proceeds thereof, or other post-petition collateral related thereto, is hereby deemed to be inconsistent with the applicable provisions of the Bankruptcy Code and shall have no force and effect with respect to the grant of DIP Liens, in such leasehold

interest or the proceeds of any assignment and/or sale thereof by the Debtor, in favor of the DIP Lender, in accordance with the terms of the DIP Note and of this Interim Order. In addition, all governmental (domestic and foreign), shareholder, corporate, member, and third-party consents have been obtained or are hereby overridden by the terms of this Interim Order.

24.     No post-petition claim or lien having a priority superior to or *pari passu* with those granted by the DIP Note and this Interim Order to the DIP Lender shall be granted or allowed while any portion of the DIP Note or the DIP Obligations remain outstanding, and the DIP Liens shall not be: (i) subject or junior to any lien or security interest that is avoided and preserved for the benefit of the Debtor's estate under section 551 of the Bankruptcy Code; or (ii) subordinated to or made *pari passu* with any other lien or security interest, whether under section 364(d) of the Bankruptcy Code or otherwise.

25.     Unless all DIP Obligations have been indefeasibly paid in full, the Debtor shall not seek, and in addition to the other Events of Default set forth below, it shall constitute an Event of Default hereunder if the Debtor seeks, or if there is entered: (i) any modifications or extensions of this Interim Order without the prior written consent of the DIP Lender, and no such consent shall be implied by any other action, inaction or acquiescence by the DIP Lender; (ii) an order converting or dismissing this Bankruptcy Case; (iii) an order appointing a chapter 11 trustee in this

Bankruptcy Case, without the consent of the DIP Lender; or (iv) an order appointing an examiner with enlarged powers in this Bankruptcy Case. In the event of the entry of any order dismissing this Bankruptcy Case under section 1112 of the Bankruptcy Code or otherwise, such order shall provide (in accordance with sections 105 and 349 of the Bankruptcy Code) that (x) the Superpriority Claims and security interests granted to the DIP Lender, pursuant to this Interim Order and the DIP Note, shall continue in full force and effect and maintain their priorities as provided in this Interim Order until all DIP Obligations have been paid and satisfied in full (and that such Superpriority Claims, DIP Liens and security interests, shall, notwithstanding such dismissal, remain binding on all parties in interest) and (y) this Court shall retain jurisdiction, notwithstanding such dismissal, for the purposes of enforcing the claims, liens and security interests referred to in clause (x) above.

26.    If any or all of the provisions of this Interim Order are hereafter reversed, modified, vacated or stayed, such reversal, modification, vacation or stay shall not affect (i) the validity of any DIP Obligations incurred prior to the actual receipt of written notice by the DIP Lender, as of the effective date of such reversal, modification, vacation or stay, or (ii) the validity or enforceability of any lien or priority authorized or created hereby or pursuant to the DIP Note with respect to any DIP Obligations. Notwithstanding any such reversal, modification, vacation or stay, any DIP Obligations incurred by the Debtor to the DIP Lender prior to the actual

receipt of written notice by the DIP Lender of the effective date of such reversal, modification, vacation or stay shall be governed in all respects by the original provisions of this Interim Order and the DIP Note, and the DIP Lender shall be entitled to all the rights, remedies, privileges and benefits granted in section 364(e) of the Bankruptcy Code, this Interim Order and pursuant to the DIP Note with respect to the DIP Obligations.

27. Except as expressly provided in this Interim Order or in the DIP Note, the DIP Liens, the Superpriority Claims and all other rights and remedies of the DIP Lender granted by the provisions of this Interim Order and the DIP Note shall survive, and shall not be modified, impaired or discharged by any of: (i) the entry of an order converting this Bankruptcy Case to a case under chapter 7 or dismissing this Bankruptcy Case; (ii) the entry of an order approving the sale of any DIP Collateral or pursuant to section 363(b) of the Bankruptcy Code (except to the extent permitted by the DIP Note and hereunder); or (iii) the entry of an order confirming a plan of reorganization in this Bankruptcy Case. The terms and provisions of this Interim Order and the DIP Note shall continue in this Bankruptcy Case, in any successor case(s), or in any superseding chapter 7 case(s) under the Bankruptcy Code, and the DIP Liens, the Superpriority Claims and all other rights and remedies of the DIP Lender granted by the provisions of this Interim Order and the DIP Note shall continue in full force and effect until the DIP Obligations are indefeasibly paid in

full unless otherwise consented to, in writing, in advance, by the DIP Lender, in its sole discretion.

28.     The proceeds of the DIP Loan shall only be used in accordance with the terms of DIP Note, the Budget and this Interim Order or any Final Order.

29.     The occurrence or existence of the following events shall constitute an Event of Default hereunder, in addition to any and all defaults and Events of Default provided in the DIP Note, which are explicitly incorporated by reference in this Interim Order, and shall collectively be referred to herein as an "Event of Default":

(a)     The Debtor does not pay on the due date any amount payable pursuant to any of the DIP Note or this Interim Order at the place and in the amount required to be paid.

(b)     The Debtor does not comply with any provision of the DIP Note or this Interim Order or any Final Order entered in this Bankruptcy Case (other than those referred to in the foregoing subsection).

(c)     Any representation, warranty or statement made or given or deemed to be made or given by the Debtor in the DIP Note, this Interim Order or any Final Order entered in this Bankruptcy Case or any other document delivered by or on behalf of the Debtor under or in connection with the DIP Note is or proves to have been incorrect or misleading in any material respect when made or deemed to be made.

(d) Any post-petition indebtedness of the Debtor to any party is declared to be or otherwise becomes due and payable before its specified maturity.

(e) Any creditor of the Debtor becomes entitled to declare any indebtedness of the Debtor due and payable before its specified maturity as a result of an event of default (however described) and receives relief from stay to exercise its remedies.

(f) It is or becomes unlawful for Debtor to perform any of its obligations under the DIP Note or this Interim Order or any Final Order entered in this Bankruptcy Case.

(g) The Debtor repudiates any of the DIP Note or evidences an intention to repudiate any of the DIP Note or this Interim Order or any Final Order entered in this Bankruptcy Case.

(h) The DIP Note is not (or is claimed by the Debtor not to be) in full force and effect.

(i) The holder of any lien on any of the assets of the Debtor receives relief from stay to commence or attempt to commence any enforcement or remedy with respect to any such assets.

(j) This Court shall enter any order(s) (i) amending, reversing, revoking, supplementing, altering, staying, vacating, rescinding or otherwise modifying this Interim Order or any other order with respect to this Bankruptcy Case

affecting in any material respect the DIP Note, (ii) appointing a Chapter 11 trustee or an examiner in the Case with enlarged powers relating to the operation of the business of the Debtor pursuant to section 1104 of the Bankruptcy Code, (iii) dismissing this Bankruptcy Case or converting this Bankruptcy Case to a case under Chapter 7 of the Bankruptcy Code, or (iv) granting relief from the automatic stay for a lien on the assets of the Debtor to permit any foreclosure upon any of the DIP Collateral or assets of the estate.

(k)     Any order(s) is entered by this Court approving a motion filed in this Bankruptcy Case approving any superpriority claims in this Bankruptcy Case which are *pari passu* with or senior to the claims of the DIP Lender against the Debtor unless after giving effect to the transactions contemplated by such motion, all of the DIP Obligations (as defined in the DIP Note) shall be either (i) senior in all respects, or (ii) indefeasibly paid in full in cash in their sole discretion.

(l)     Any motion shall be filed by the Debtor in the Bankruptcy Case (i) seeking to obtain additional financing under section 364 of the Bankruptcy Code without the consent of the DIP Lender that is not subordinate to the rights and remedies of the DIP Lender hereunder or, in the alternative, does not provide for the indefeasible and immediate repayment of the DIP Obligations in cash at the closing of such new financing, (ii) subject to the entry of the Final Order, to recover from any portion of the DIP Collateral any costs or expenses of preserving or disposing of

such DIP Collateral under section 506(c) of the Bankruptcy Code, or (iii) to take any other action or actions adverse to rights and remedies of the DIP Lender hereunder or under the DIP Note or this Interim Order or any Final Order entered in this Bankruptcy Case.

(m) The Debtor fails to be in compliance with any item on the Budget for any applicable period.

(n) The Debtor materially fails to comply with any performance and reporting covenants contained in this Interim Order or any Final Order entered in this Bankruptcy Case or the DIP Note, or breaches any provisions of this Interim Order or any Final Order entered in this Bankruptcy Case or the DIP Note.

(o) Any material breach of the Debtor's governance documents.

(p) If an order is entered dismissing the Case which does not contain a provision for payment in full in cash of all DIP Obligations of the Interim Order or any Final Order entered in this Bankruptcy Case or the DIP Note.

30. All DIP Obligations shall be immediately due and payable and all commitments to extend credit under the DIP Note shall terminate the earlier of: (i) an Event of Default or (ii) the date that is one hundred twenty (120) days after the entry of this Interim Order (the "Termination Date"), unless the Termination Date is extended by written stipulation of the DIP Lender and the Debtor, or further order of this Court.

31. Upon the occurrence and continuation of a monetary Event of Default or an uncured non-monetary Event of Default, following the DIP Lender providing three (3) days' written notice, which shall be provided via email to the Debtor, all secured creditors, and to the United States Trustee, subject to compliance with this Interim Order, all of the DIP Obligations shall become immediately due and payable, without any further demand, notice, further order of this Court or legal process of any kind, and the DIP Lender shall file a motion with this Court seeking emergency relief for further order of this Court modifying the automatic stay in this Bankruptcy Case to permit the DIP Lender to exercise any and all rights and remedies against Debtor and/or the DIP Collateral as provided herein, in the DIP Note, the UCC, and other applicable law, or otherwise, including but not limited to:

(i) file any action or proceeding which the DIP Lender may deem necessary or appropriate to protect and preserve the right, title and interest of the DIP Lender in the DIP Collateral;

(ii) apply all sums received or collected from or on account of DIP Collateral, including the proceeds of any sales thereof, to the payment of the costs and expenses incurred in preserving and enforcing rights of the DIP Lender, including but not limited to reasonable attorneys' fees and legal expenses, and DIP Obligations secured by the DIP Collateral, in such order and manner as the DIP Lender in its sole discretion determines; and

(iii) exercise any other rights or remedies available to the DIP Lender under this Interim Order, the UCC, the DIP Note, the Bankruptcy Code, applicable law, equity or otherwise.

32. All rights, remedies and powers granted to the DIP Lender hereunder, in the DIP Note, the UCC or other applicable law, or otherwise, are cumulative, not exclusive, and enforceable in the discretion of the DIP Lender, alternatively, successively, or concurrently on any one or more occasions, and shall include, without limitation, the right to apply to a court of equity for an injunction to restrain a breach or threatened breach by the Debtor of the DIP Note.

33. Upon the Termination Date, all reasonable and documented post-petition fees and out-of-pocket expenses of the DIP Lender in connection with the DIP Note and the Bankruptcy Case, including without limitation, the fees, costs and out-of-pocket expenses of the DIP Lender's professionals, shall be part of the DIP Obligations. The DIP Lender shall have the right to charge the DIP Note for any such fees and costs. To the extent the DIP Lender charges the DIP Note for such fees and costs, they will become part of the DIP Note.

34. This Interim Order does not create any rights for the benefit of any third party, creditor, lessor, equity holder, or any direct, indirect, or incidental beneficiary.

35. The Debtor and the DIP Lender may enter into one or more amendments, waivers, consents, or other modifications to and under the DIP Note,

in each case in accordance with the terms of the applicable DIP Note and in such form as Debtor and the DIP Lender agree and no further approval of this Court shall be required for any non-substantive amendment, waiver, consent, or other modification to and under the DIP Note (and any fees paid in connection therewith) that does not materially and adversely affect the Debtor or which does not (i) shorten the maturity of the DIP Note, (ii) increase the principal amount of, the rate of interest on, or the fees payable in connection with the DIP Note, or (iii) change any Event of Default, add any covenants, or amend the covenants in each case to be materially more restrictive; *provided, however*, notice of any such amendment or other modification shall be provided by the Debtor to the Office of the United States Trustee five (5) days in advance of its effectiveness, to the extent reasonably practicable, with an opportunity for parties-in-interest to object. No consent to any such amendment, waiver, consent, or modification set forth in this paragraph shall be implied by any action, inaction, or acquiescence of the DIP Lender.

36. This Court has and will retain jurisdiction to enforce this Interim Order according to its terms. In the event of any inconsistency between the provisions of this Interim Order and the DIP Note, the provisions of this Interim Order shall govern.

37. Immediately upon entry of this Interim Order by this Court, the DIP Note and the provisions of this Interim Order, including all findings herein, shall be

valid and binding upon all parties in interest in this Bankruptcy Case, including, without limitation, the DIP Lender and Debtor and their respective successors and assigns (including any chapter 7 trustee upon conversion or chapter 11 trustee hereinafter appointed or elected for the estate of the Debtor) and shall inure to the benefit of the DIP Lender and Debtor and their respective successors, and assigns; provided, however, that the DIP Lender shall not have any obligation to permit the use of the DIP Collateral or extend any financing to Debtor and any chapter 7 trustee or similar responsible person appointed for the estate of the Debtor.

38. In determining to extend the DIP Note or in exercising any rights or remedies as and when permitted pursuant to this Interim Order or the DIP Note, the DIP Lender shall not be deemed to be in control of the operations of or participating in the management of the Debtor or to be acting as a "responsible person" or "owner or operator" with respect to the operation or management of the Debtor (as such terms, or any similar terms, are used in the United States Comprehensive Environmental Response, Compensation and Liability Act, 42 U.S.C. §§ 9601, et seq., as amended, or any similar federal or state statute).

39. Any stipulations and admissions contained in this Interim Order shall be binding upon the Debtor and any of its successors (including, without limitation, any chapter 7 trustee upon conversion or chapter 11 trustee appointed or elected for Debtor) in all circumstances.

40. This Interim Order shall constitute findings of fact and conclusions of law and shall take effect and be fully enforceable immediately upon entry hereof. Notwithstanding Bankruptcy Rules 4001(a)(3), 6004(h), 6006(d), 7062, or 9024, any other Bankruptcy Rule or Rule 62(a) of the Federal Rules of Civil Procedure, this Interim Order shall be immediately effective and enforceable upon its entry and there shall be no stay of execution or effectiveness of this Interim Order.

41. The Final Hearing with respect to this Interim Order shall be held on _____, 2026 at _____ [a.m./p.m.] pursuant to a subsequent notice to be issued by this Court.

# EXHIBIT B

## Budget

**Budget of South Town by 4M, LLC**
**April 1-2026-June 30, 2026**

| Expense | April | May | June | Total |
|---|---|---|---|---|
| Interest Payments to CNB (estimated) | $115,000.00 | $115,000.00 | $115,000.00 | $345,000.00 |
| UST Quarterly Fee | $350.00 | — | — | $350.00 |
| Monthly Total | $115,350.00 | $115,000.00 | $115,000.00 | $345,350.00 |

**EXHIBIT C**

**Declaration of Heidi Caroline Poscher**

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

In re:                                                Case No. 26-40805-lsg

South Town by 4M LLC,                                 Chapter 11

Debtor.                                               Hon. Lisa S. Gretchko

_____/

### DECLARATION OF HEIDI POSCHER, RESPONSIBLE PERSON FOR DEBTOR SOUTH TOWN BY 4M LLC

I, **HEIDI CAROLINE POSCHER**, hereby declare:

1. I am over the age of 18 and competent to testify to these facts.

2. I am the Personal Representative of the Estate of the Debtor's sole Member—Margaret Poscher (Deceased)—and the responsible person for the Debtor.

3. Each of the statements contained in this declaration is based upon my personal knowledge and, if called as a witness, I could and would competently testify.

4. All of the facts set forth in the Debtor's *Motion for Entry of an Order (a) Authorizing The Debtor to Obtain Post-Petition Secured Financing; and (b) Granting Liens, Security Interests, and Superpriority Claim* (the "Motion") are true and accurate.

Docusign Envelope ID: 1D5C1F1C-AECC-47AD-9234-34AEE9CD739C

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Signed by:

*Heidi Poscher*

Heidi Caroline Poscher
Responsible Person of the Debtor

# EXHIBIT D

# DIP Note

**POST-PETITION FINANCING NOTE[4]**

Dated: April __, 2026

**FOR VALUE RECEIVED, South Town by 4M LLC,** ("Borrower"), Debtor in Chapter 11 Case No. 26-40805-lsg in the U.S. Bankruptcy Court for the Eastern District of Michigan (the "Chapter 11 Case") promises to pay to the order of **Heidi Caroline Poscher** ("Lender") on the Maturity Date (as defined herein) at 1919 S. Industrial Hwy, Ann Arbor, MI 48104 or at such other place as Lender may designate in writing, the principal sum equal to Four Hundred Thousand Dollars ($400,000.00) or so much as has been advanced by Lender and not repaid pursuant to this Post-Petition Financing Note (the "Note"), plus interest as hereinafter provided, in lawful money of the United States.

No advance shall be made hereunder following an Event of Default, unless permitted by Lender in its sole discretion.

This is a Note under which advances and repayments, including re-advances, may be made from time to time, and which indebtedness may increase or decrease from time to time; provided, however, the aggregate principal amount outstanding hereunder shall not exceed the maximum principal amount of this Note at any time.

This Note shall be accorded super-priority administrative expense status in the Chapter 11 Case, pursuant to Bankruptcy Code Section 364(c)(1) and secured by a junior lien on Borrower's property in accordance with Bankruptcy Code Section 364(c)(3).

All funds advanced must be used in accordance with the order of the United States Bankruptcy Court for the Eastern District of Michigan in (i) the Borrower's chapter 11 bankruptcy case approving this Note and the debtor-in-possession financing from the Lender to the Borrower (the "DIP Approval Order") and (ii) the DIP Loan Documents[5] (as defined below and in the DIP Approval Order), and that the funds requested are needed by the Borrower for the purposes permitted thereunder. The Borrower shall use advances under this Note only for payment of adequate protection payments to County National Bank, and such other related and/or necessary costs of operation of the Borrower, as set forth in the Budget (as defined in the DIP Approval Order).

---

[1]    Capitalized terms used but not otherwise defined herein have the meanings given to such terms in the DIP Approval Order (as defined herein).

[2]    "DIP Loan Documents" shall mean, collectively, this Note, the DIP Approval Order, and any other document, instrument or agreement evidencing or securing this Note, together with any and all modifications and amendments to any of the foregoing.

The Borrower's ability to request advances under this Note shall terminate on the earlier of an Event of Default  (as described below) or the date that is one hundred twenty (120) days after the entry of the DIP Approval Order (the "Termination Date"), unless the Termination Date is extended by written stipulation of Lender and the Borrower.

The unpaid principal balance outstanding from time to time under this Note shall bear interest at seven percent (7%) per annum.  Interest shall be calculated on the basis of a 360 day year for the actual number of days elapsed.  In the event of default, the "Default Rate" shall be nine percent (9%) per annum.

The unpaid principal balance and all accrued interest thereon shall be due and payable in full on the effective date of Debtor's Chapter 11 Plan in the Bankruptcy Case (the "Maturity Date") (or earlier upon acceleration upon an Event of Default and the Termination Date).

Any payment made by the Borrower will be deemed tendered and received only upon actual receipt (time being of the essence) by Lender.  Borrower hereby expressly assumes all risk of loss or liability resulting from non-delivery or delay in delivery of any payment transmitted by mail or in any other manner.

Borrower may prepay all or any portion of the indebtedness outstanding hereunder at any time, without premium or penalty.

Nothing herein contained, nor any transaction relating thereto, or hereto, shall be construed or operate to require the Borrower to pay, or be charged, interest at a greater rate than the maximum allowed by the applicable law relating to this Note.  Should any interest or other charges, charged, paid or payable by the Borrower in connection with this Note, or any other document delivered in connection herewith, result in the charging, compensation, payment or earning of interest in excess of the maximum allowed by the applicable law as aforesaid, then any and all such excess shall be and the same is hereby waived by the holder, and any and all such excess paid shall be automatically credited against and in reduction of the principal due under this Note.

If any Event of Default (as defined in the DIP Approval Order) occurs under the DIP Approval Order, it shall also constitute an "Event of Default" under this Note.

Upon the occurrence of an Event of Default: (a) the entire unpaid principal balance and all accrued interest shall at the sole option of Lender be immediately due and payable, without presentment, demand, protest or any further notice or any other formalities of any kind, all of which are hereby expressly and irrevocably waived, together with (to the extent permitted under applicable law) the reasonable and documented costs, fees and expenses, including but not limited to attorneys' fees, reasonably incurred by Lender in connection with Borrower, including in collecting or enforcing payment, (b) the outstanding principal amount hereof shall bear interest at the Default Rate, (c) Lender may proceed to protect and enforce all or any of its rights, remedies, powers and privileges under this Note by action at law, suit in equity or other appropriate proceedings, and (d) any commitment or obligation, if any, on the part of Lender to make loans or otherwise extend credit to or in favor of Borrower shall immediately terminate.

All payments shall, at the option of Lender, first be applied against any and all fees, costs and expenses (including expenses of collection), then against accrued interest, and the balance against principal. Acceptance by Lender of any payment in an amount less than the amount then due shall be deemed an acceptance on account only, and the failure to pay the entire amount then due shall be and continue to be an Event of Default.

Borrower hereby waives presentment for payment, demand, notice of non-payment, notice of protest and protest of this Note, diligence in collection or bringing suit.

No delay or omission of the Lender to exercise any right under this Note impairs that right nor can it be construed to waive any Event of Default or acquiesce in any Event of Default, and the making of an advance notwithstanding the existence of an Event of Default or the inability of the Borrower to satisfy the conditions precedent to such advance does not constitute a waiver or acquiescence. Any single or partial exercise of any right does not preclude any other or further exercise of it or the exercise of any other right, and no waiver, amendment or other variation of the terms of this Note is valid unless in writing signed by Borrower and Lender, and then only to the extent that such writing specifies. All remedies contained in this Note or afforded by law are cumulative and all are available to the Lender until this Note has been paid in full. Advances made by Lender under this Note do not constitute a waiver of any defaults or Events of Default under prior promissory notes executed by Borrower in favor of Lender; all rights and remedies of Lender with respect to any such defaults or Events of Default are reserved.

The Borrower must reimburse the Lender for any reasonable and documented costs, charges and out-of-pocket expenses (including attorneys' fees) paid or reasonably incurred by the Lender in connection with the preparation, review, execution, delivery, amendment, modification, administration, collection and enforcement of this Note. The Borrower further indemnifies the Lender against all losses, claims, damages, penalties, judgments, liabilities and expenses (including without limitation all expenses of litigation or preparation for litigation whether or not the Lender is a party) which any of them pay or incur arising out of or relating to this Note or the direct or indirect application or proposed application of the proceeds of this Note.

The terms of this Note bind and benefit the Borrower and the Lender and their respective successors and assigns, except that the Borrower shall not assign its rights or obligations under this Note. The Lender may at any time assign to one or more entities all or any part of its rights and obligations under this Note, and the Borrower releases the Lender for the amount so assigned.

This Note is to be construed in accordance with the internal laws (but not the law of conflicts) of the State of Michigan.

**IN RECOGNITION OF THE HIGHER COSTS AND DELAY WHICH MAY RESULT FROM A JURY TRIAL, BORROWER AND LENDER WAIVE ANY RIGHT TO TRIAL BY JURY OF ANY CLAIM, DEMAND, ACTION OR CAUSE OF ACTION (A) ARISING HEREUNDER OR IN CONNECTION WITH THE OBLIGATIONS, OR (B) IN ANY WAY CONNECTED WITH OR RELATED OR INCIDENTAL TO THE DEALINGS OF THE PARTIES HERETO OR ANY OF THEM WITH RESPECT HERETO, IN EACH CASE WHETHER NOW EXISTING OR HEREAFTER ARISING, AND WHETHER**

**SOUNDING IN CONTRACT OR TORT OR OTHERWISE; AND BORROWER FURTHER WAIVES ANY RIGHT TO CONSOLIDATE ANY SUCH ACTION IN WHICH A JURY TRIAL HAS BEEN WAIVED WITH ANY OTHER ACTION IN WHICH A JURY TRIAL CANNOT BE OR HAS NOT BEEN WAIVED; AND BORROWER HEREBY AGREES AND CONSENTS THAT ANY SUCH CLAIM, DEMAND, ACTION OR CAUSE OF ACTION SHALL BE DECIDED BY COURT TRIAL WITHOUT A JURY, AND THAT ANY PARTY HERETO MAY FILE AN ORIGINAL COPY OF THIS NOTE WITH ANY COURT AS WRITTEN EVIDENCE OF THE CONSENT OF BORROWER TO THE WAIVER OF ITS RIGHT TO TRIAL BY JURY.**

"BORROWER"

**South Town by 4M LLC**

_____

By:_____

Its:_____

Address:_____


**ACCEPTED AND AGREED TO:**

**"LENDER"**

_____

**Heidi Caroline Poscher**