UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| In re: | Case No. 26-40805-lsg |
| South Town by 4M LLC, | Chapter 11 |
| Debtor. | Hon. Lisa S. Gretchko |

_________________________/

**SECOND MOTION FOR ENTRY OF AN ORDER AUTHORIZING THE DEBTOR TO INCREASE THE AMOUNT OF ITS POST-PETITION FINANCING**

The Debtor, South Town by 4M LLC (the "Debtor" or "Debtor in Possession"), for its *Second Motion for Entry of an Order (a) Authorizing the Debtor to Increase the Amount of Its Post-Petition Financing* (the "Second DIP Increase Motion") states as follows:

**PRELIMINARY STATEMENT**

Through this Second DIP Increase Motion, the Debtor requests entry of an order substantially in the form attached hereto as **Exhibit A** (the "Second Amended DIP Financing Order"), seeking authority to increase the maximum amount available under its existing post-petition financing facility and borrow up to an additional $135,000.00 (the "Second Amended DIP Loan") to enable the Debtor to make the September 27, 2026 interest-only payments (the "Interest-Only Payments") to

County National Bank ("CNB"), the City of Ann Arbor, and Higley[1] (the "Interest-Only Payees"), to the extent required under Section 362(d)(3) of the Bankruptcy Code, as reflected in the second amended budget (the "Second Amended Budget"), attached hereto as **Exhibit B**.

## JURISDICTION

1. This Court has jurisdiction over this Motion pursuant to 28 U.S.C. § 1334. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).

2. Venue is proper under 28 U.S.C. §§ 1408 and 1409.

3. The statutory basis for the relief requested herein is Sections 105, 362, 363, 364, and 507 of Title 11 of the United States Code, 11 U.S.C. §§ 101–1330, as amended (the "Bankruptcy Code"), Rule 4001 and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Local Bankruptcy Rule 4001-2 (Bankr. E.D. Mich.).

## PROCEDURAL BACKGROUND

4. On January 27, 2026 (the "Petition Date"), the Debtor filed a voluntary petition for relief in this Court under Chapter 11 of the Bankruptcy Code.

5. The Debtor continues to manage and operate its business as the

---

[1] All capitalized terms not defined herein shall have the meaning assigned to them in the *Order Granting Debtor's Motion for Authority to Increase the Amount of Its Post-Petition Financing* [ECF No. 153] (the "First Amended DIP Financing Order").

Debtor-in-possession pursuant to Section 1184 of the Bankruptcy Code.

6. Heidi Poscher, Personal Representative of the Estate of the Debtor's sole Member—Margaret Poscher (Deceased)—is the responsible person for the Debtor.

7. The Declaration of Heidi Poscher attesting to the accuracy of the facts set forth and in support of the Second DIP Increase Motion, is attached hereto as **Exhibit C**.

8. No creditors' committee has been appointed.

9. On February, 13 2026, CNB filed its *Motion to Designate Case as a Single Asset Real Estate Case* [ECF No. 33] (the "SARE Motion").

10. On March 12, 2026, the Court thereafter heard arguments on the SARE Motion, granted the Motion, and entered its *Order Granting Motion to Designate Case as a Single Asset Real Estate Case* [ECF No. 65] (the "SARE Order").

11. As a result of the SARE Order and pursuant to requirements of Section 362(d)(3) of the Bankruptcy Code, the Debtor had to either file its Plan by April 27, 2026 or commence making non-default interest rate payments to its secured lenders by such date.

12. The Debtor elected to commence making the non-default interest rate payments, in lieu of filing its Plan. The Debtor has made all required Interest-Only

Payments to date.

13. To facilitate the payment to the Interest-Only Payees, the Debtor sought authority to obtain post-petition financing consisting of a superpriority, secured (but subordinate to any valid liens of record), multiple-draw term loan in an amount not to exceed the aggregate principal amount of $400,000.00 (the "Initial DIP Loan").

14. On May 22, 2026, the Court entered its *Final Order (a) Authorizing the Debtor to Obtain Post-Petition Secured Financing; and (b) Granting Liens, Security Interests, and Super Priority Clam* (the "Final DIP Financing Order") [ECF No. 125], approving the Initial DIP Loan. The Final DIP Financing Order provided, *inter alia*, that "[t]he terms of the of the Amended DIP Note are objectively fair and reasonable" and "[t]he Amended DIP Note represents a reasonable loan arrangement between the Debtor and the DIP Lender." Final DIP Financing Order, p.3. The Debtor seeks the Second Amended DIP Loan under these same objectively fair and reasonable terms.

15. On July 9, 2026, the Debtor filed its *Motion for Entry of An Order Authorizing the Debtor to Increase the Amount of Its Post-Petition Financing* [ECF No. 132] (the "First DIP Increase Motion"). Upon a Stipulation, Supplement, and after a hearing on the First DIP Increase Motion, on July 27, 2026, the Court entered its *Order Granting Debtor's Motion for Authority to Increase the Amount of Its*

*Post-Petition Financing* [ECF No. 153] (the "First Amended DIP Financing Order" and together with the Final DIP Financing Order, the "Prior DIP Financing Orders"), authorizing the Debtor to increase the amount of its DIP Financing from $400,000.00 to $650,000.00 (the "First Amended DIP Loan"). The Debtor again seeks to increase the amount of its DIP Financing—now from $650,000.00 to $785,000.00.

16. On July 27, 2026, the Debtor filed its *Combined Chapter 11 Plan and Disclosure Statement* [ECF No. 154] (the "Chapter 11 Plan"). On August 10, 2026, the Court entered its *Order Granting Preliminary Approval of Disclosure Statement and Scheduling Heating regarding Final Approval of the Disclosure Statement and Confirmation of Amended Plan* [ECF No. 169] (the "Preliminary Approval Order").

17. On August 12, 2026, the Debtor filed its *First Amended Combined Chapter 11 Plan and Disclosure Statement* [ECF No. 162] (the "First Amended Plan"), and on August 20, 2026, the Debtor filed its *Supplement to First Amended Combined Chapter 11 Plan and Disclosure Statement* [ECF No. 176] (the "Plan Supplement," and collectively with the Chapter 11 Plan and First Amended Plan, the "Plan").

18. The Preliminary Approval Order set the hearing on confirmation of the Plan for September 25, 2026 (the "Confirmation Hearing Date"). The Interest-

Only Payment for September is due on September 27, 2026. In the event the Plan is not confirmed by September 27, 2026, the Debtor is seeking this Second Amended DIP Loan to cover the Interest-Only Payments due on September 27, 2026.

19. Through the Second DIP Increase Motion, Debtor moves to increase the First Amended DIP Loan to the Second Amended DIP Loan as reflected in the Third Amended and Restated DIP Note (the "Third Amended DIP Note") attached hereto as **Exhibit D**.

## RELIEF REQUESTED

20. Through this Second DIP Increase Motion, the Debtor seeks the entry of the Second Amended DIP Financing Order, substantially in the form attached hereto as Exhibit A, authorizing the Debtor incur the Second Amended DIP Loan.

21. The Second Amended DIP Loan is comprised of the following principal terms:[2]

(a) Second Amended DIP Loan. The additional post-petition financing is to be provided to the Debtor by Heidi Caroline Poscher (the "DIP Lender") consisting of an additional loan in an amount not to exceed the additional principal amount of $135,000.00, which, along with the First Amended DIP Loan, results in an aggregate principal amount of $785,000.00, memorialized in the Third Amended DIP Note (the "Second Amended DIP Obligations").

[2] Reference should be made to *Exhibit A* for the exact terms of the proposed financing order; the following is a summary of certain of its key provisions.

(b) Collateral. The Second Amended DIP Loan shall be collateralized (the "DIP Collateral"):

(i) pursuant to section 364(c)(2) of the Bankruptcy Code, by valid, enforceable, fully-perfected, non-avoidable, automatically and properly perfected first priority senior liens on and security interests in all unencumbered property of the Debtor whether existing on the petition date or thereafter acquired, including, without limitation, all Debtor's right, title and interest in and to all unencumbered assets and property of the Debtor and Debtor's estate, whether acquired pre-petition or post-petition, and the proceeds, products, rents and profits thereof, whether arising from section 552(b) of the Bankruptcy Code or otherwise, including, without limitation, all of the following to the extent unencumbered: cash, if any, (and any investment of such cash) of the Debtor; all equipment, all goods, all accounts, cash, payment intangibles, bank accounts, and other deposit or securities accounts of the Debtor (including any accounts opened prior to, on, or after the Petition Date) to the fullest extent permitted under applicable law; all insurance policies and proceeds thereof; equity interests, instruments, intercompany claims, accounts receivable, other rights to payment, all general intangibles, all contracts and contract rights, securities, investment property, letters of credit and letter of credit rights, chattel paper; all owned real estate, real property leaseholds and fixtures of the Debtor; patents, copyrights, trademarks, trade names, rights under license agreements and other intellectual property of the Debtor; all claims and causes of action; and any and all proceeds, products, rents, and profits of all of the foregoing; provided, for the avoidance of doubt, and notwithstanding anything to the contrary contained herein, to the extent a lien cannot attach to any of the foregoing pursuant to applicable law, the liens granted pursuant to the Second Amended DIP Financing Order shall attach to the Debtor's economic rights, including, without limitation, any and all proceeds of all of the foregoing; and

(ii) pursuant to section 364(c)(3) of the Bankruptcy Code, valid,

enforceable, fully-perfected, non-avoidable, automatically and properly perfected junior liens on, and security interests in, all tangible and intangible pre-petition and post-petition property of the Debtor that is subject to valid, enforceable, properly perfected, non-avoidable security interests, mortgages or liens in existence as of the Petition Date, if any; provided that nothing herein shall limit the rights of the DIP Lender to the extent such liens are not permitted thereunder or otherwise not entitled to priority under applicable law (including applicable contract law).

(c) Superpriority status. Pursuant to section 364(c)(1) of the Bankruptcy Code, all of the Second Amended DIP Obligations shall constitute allowed claims against the Debtor with priority over any and all administrative expenses, diminution claims and all other claims against the Debtor (other than existing liens of record), now existing or hereafter arising, of any kind whatsoever, including, without limitation, all administrative expenses of the kind specified in sections 503(b) and 507(b) of the Bankruptcy Code, and over any and all administrative expenses or other claims arising under sections 105, 326, 328, 330, 331, 503(b), 506(c), 507(a), 507(b), 726, 1113 or 1114 of the Bankruptcy Code, whether or not such expenses or claims may become secured by a judgment lien or other non-consensual lien, levy or attachment, which allowed claims shall be payable from and have recourse to all pre-petition and post-petition property of the Debtor and their estate and all proceeds thereof.

(d) Draw Amount. The Debtor shall be entitled to request draws (the "Draws") on the Second Amended DIP Loan for all reasonable and necessary expenses identified in the Second Amended Budget. The Debtor will seek Draws not to exceed the amount necessary to make the required Interest-Only Payments to the Interest-Only Payees, estimated to not exceed $135,000.00 (the "Second Amended DIP Interim Draw Amount").

(e) Interest. The non-default interest rate on the Second Amended DIP Loan shall be seven (7) percent and the default interest rate shall be nine (9) percent.

(f) Event of Default. In the event of the following, the DIP Lender may request the Court's determination that such occurrence is an "Event of Default" and seek appropriate remedies for same:

(i) an Order converting or dismissing this Bankruptcy Case;

(ii) an Order appointing a chapter 11 trustee in this Bankruptcy Case, without the consent of the DIP Lender; or

(iii) an Order appointing an examiner with enlarged powers in this Bankruptcy Case.

(g) Acceleration. All Second Amended DIP Obligations shall be immediately due and payable and all commitments to extend credit under the Third Amended DIP Note shall terminate the earlier of (i) the effective date of Debtor's confirmed Chapter 11 Plan in the Bankruptcy Case, or (ii) the later of (a) 30 days after the expiration of Debtor's exclusivity and solicitation periods and (b) the date that is one hundred twenty (120) days after the entry of the Second Amended DIP Financing Order the ("Second Amended DIP Termination Date"), unless the Second Amended DIP Termination Date is extended by written stipulation of the DIP Lender, and the Debtor or further order of this Court.

(h) Remedies. Upon the occurrence of an Event of Default as defined in the Second Amended DIP Financing Order, the DIP Lender may seek authority from the Court to exercise any remedy that the Court deems appropriate which may include, but are not limited to, rights or remedies available to the DIP Lender under the Second Amended DIP Financing Order, the UCC, the Third Amended DIP Note, the Bankruptcy Code, applicable law, equity or otherwise.

## ARGUMENT

22. Section 364 of the Bankruptcy Code allows a debtor to obtain credit or incur debt by either: (a) obtaining unsecured credit in the ordinary course of

business; (b) obtaining unsecured credit outside the ordinary course of business; or (c) obtaining credit with specialized priority or on a secured basis. *See* 11 U.S.C. § 364. Here, the Debtor seeks to obtain secured credit structured as the Second Amended DIP Loan with (i) superpriority administrative status; (ii) junior lien status on encumbered estate assets; and (iii) first lien status on unencumbered estate assets, as allowed under section 364(c). 11 U.S.C. §§ 364 (c)(1), (2), and (3).

23. As with the intial DIP motion (the "Initial DIP Motion") and the First DIP Increase Motion, which together with the Initial DIP Motion shall be referred to hereinafter as the "Prior DIP Motions," the Debtor is again unable to obtain financing on more favorable terms from sources other than from the DIP Lender under the Third Amended DIP Note, and is unable to obtain adequate unsecured credit allowable under section 503(b)(1) of the Bankruptcy Code as an administrative expense. And whereas, after hearings on the Prior DIP Motions, the Court entered its Prior DIP Financing Orders, the Debtor needs access to additional DIP financing in the form the Second Amended DIP Loan as set forth in the Third Amended DIP Note, and under the same terms as the Prior DIP Financing Orders.

24. The ability for a debtor to enter into post-petition financing arrangements under section 364 of the Bankruptcy Code is governed by the business judgment standard. *See In re Ames Dep't Stores, Inc.*, 115 B.R. 34, 40 (Bankr. S.D.N.Y. 1990) ("[C]ases consistently reflect that the court's discretion under

section 364 is to be utilized on grounds that permit reasonable business judgment to be exercised so long as the financing agreement does not contain terms that leverage the bankruptcy process and powers or its purpose is not so much to benefit the estate as it is to benefit parties in interest."); *see also In re Farmland Indus., Inc.*, 294 B.R. 855, 881 (Bankr. W.D. Mo. 2003) (noting that approval of post-petition financing requires, inter alia, an exercise of "sound and reasonable business judgment"); *In re Ryan Int'l Airlines, Inc.*, 2010 WL 11834046 at *11 (Bankr. N.D. Ill. Dec. 9, 2010) ("Provided that a the Debtor's business judgment does not run afoul of the provisions of, and policies under the Bankruptcy Code, Courts grant the Debtor considerable deference in acting in accordance therewith.") (relying on *In re Ames*, 115 B.R., *et al.*).

25. The terms of the Third Amended DIP Note are fair and reasonable, reflect the Debtor's exercise of prudent business judgment consistent with its fiduciary duties, and the Second Amended DIP Obligations constitute reasonably equivalent value and fair consideration. As noted above, this Court—in its Prior DIP Financing Orders—already found the that "[t]he terms of the of the Amended DIP Note are objectively fair and reasonable" and that it "represent[ed] a reasonable loan arrangement between the Debtor and the DIP Lender." Through the Second Amended DIP Loan, the Debtor seeks only to increase the amount of funds available provided under the First Amended DIP Loan and extend the

Maturity Date,[3] and all other fair and reasonable terms of the Second Amended DIP Note shall remain the same, as reflected in the Third Amended DIP Note.

26. The Debtor remains unable to independently fund progress on the Development as it has no current operations or streams of revenue. Absent authority to obtain the Second Amended DIP Loan, the Debtor will not be able to cover costs necessary to preserve assets of the estate, including but not limited to the Interest-Only Payments and confirm its Plan.

27. The DIP Lender is a statutory insider of the Debtor. *See* 11 U.S.C. § 101(31)(B) ("if the Debtor is corporation (iii) person in control of the Debtor"). The DIP Lender is the responsible person for, and in control of, the Debtor. While section 364 does not impose a different statutory standard for insider lenders, Sixth Circuit precedent and bankruptcy jurisprudence require heightened scrutiny of transactions involving insiders. *See In re Autostyle Plastics, Inc*., 269 F.3d 726 (6th Cir. 2001) (business dealings between the Debtor and an insider must be scrutinized more rigorously by the courts); *see also In re Harvey Goldman Co.*, 2011 Bankr. LEXIS 3149 at *6 (Bankr. E.D. Mich. Aug. 24, 2011) ("[a]n insider is one who has a

[3] The Maturity Date in the Second Amended DIP Note was "the earlier of (i) the effective date of Debtor's confirmed Chapter 11 Plan in the Bankruptcy Case, or (ii) the later of (a) 30 days after the expiration of Debtor's exclusivity and solicitation periods and (b) the date that is one hundred twenty (120) days after the entry of the Amended DIP Financing Order" and the only proposed change in the Third Amended DIP Note is "one hundred twenty (120) days after the entry of the ***Second Amended DIP Financing Order***."

sufficiently close relationship with the Debtor that his conduct is made subject to closer scrutiny than those dealing at arm's length with the Debtor.") (citations omitted).

28. The good faith requirement under section 364(e) is particularly relevant when the lender is an insider. *See In re Grand Valley Sport and Marine*, 143 B.R. 840, 848 (Bankr. W.D. Mich. 1992) ("A bankruptcy court must make an explicit good faith finding at the time of the postpetition financing hearing to afford a postpetition lender protection under § 364(e)."). Section 364(e) protects the validity of post-petition financing authorized by the court, even if the authorization is later reversed or modified on appeal, provided the lender extended credit in good faith. *See id*.

29. The Third Amended DIP Note has been negotiated in good faith, in furtherance of the Debtor's fiduciary duties, based on the terms of the Third Amended DIP Note, which represents an arm's length and an extension of a loan arrangement this Court already determined was reasonable and in the best interest of the estate, indicated by the Court's entry of the Prior DIP Financing Orders. As set forth in more detail in the Second Amended DIP Financing Order, and to ensure all rights, remedies, privileges, and benefits granted under section 364(e) are extended to the DIP Lender, no later reversal or modification of the Second Amended DIP Loan, the Third Amended DIP Note, or any Second Amended DIP Obligation shall

have any effect on the validity or enforceability of same.

30. The Debtor requests entry of the Second Amended DIP Financing Order in accordance with Bankruptcy Rule 4001(b)(2), 4001(c)(2), and Local Rule 4001-2. Absent granting the relief set forth therein, the Debtor's estate will be immediately and irreparably harmed. Consummation of the Third Amended DIP Note in accordance with the proposed Second Amended DIP Financing Order is therefore in the best interest of the Debtor's estate.

31. Notice of the Second DIP Increase Motion has been provided to the United States Trustee, and the other parties in interest entitled to notice.

32. Based on the foregoing, Debtor respectfully requests that the Court enter the Second Amended DIP Financing Order, and that such Second Amended DIP Financing Order be effective immediately upon entry pursuant to Bankruptcy Rule 6004. The Debtor submits that immediate relief is necessary to avoid irreparable harm to the Debtor's estate, as the Debtor's ability to immediately make the Interest-Only Payments to the Interest-Only Payees, preserves the value of its estate, which would be lost if the automatic stay were lifted and any of the Interest-Only Payees foreclosed on their interest, to the detriment of all creditors of Debtor's estate.

WHEREFORE, the Debtor respectfully requests that the Court: (i) enter the Second Amended DIP Financing Order; and (ii) grant any additional relief as is just and equitable under the circumstances.

Respectfully submitted,

**TAFT STETTINIUS & HOLLISTER LLP**

/s/ *Anthony Cimini*
Jay L. Welford (P34471)
Kimberly Ross Clayson (P69804)
Anthony Cimini (P86223)
27777 Franklin Road, Suite 2500
Southfield, Michigan 48034
(248) 351-3000
jwelford@taftlaw.com
kclayson@taftlaw.com
acimini@taftlaw.com

Dated: September 8, 2026 *Counsel to the Debtor, South Town by 4M LLC*

## EXHIBIT A

## Proposed Second Amended DIP Financing Order

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

In Re:

South Town by 4M LLC,

Debtor.
______________________________/

Case No. 26-40805-lsg
Chapter 11
Hon. Lisa S. Gretchko

**ORDER GRANTING DEBTOR'S SECOND MOTION FOR AUTHORITY TO INCREASE THE AMOUNT OF ITS POST-PETITION FINANCING**

This matter came before the Court upon the Debtor's Second Motion for Entry of an Order Authorizing the Debtor to Increase the Amount of Its Post-Petition Financing ("Second DIP Increase Motion"; ECF No. _____), notice was given, and the Court held a hearing on ________, 2026 ("Hearing"). No objection to the Second DIP Increase Motion was filed or raised at the Hearing. The Court has reviewed the Second DIP Increase Motion and other pertinent filings in this matter, has considered the statements made at the Hearing, and is advised in the premises.

THE COURT HEREBY FINDS that:

A. On May 22, 2026, the Court entered its Final Order (A) Authorizing the Debtor to Obtain Post-Petition Secured Financing; and (B) Granting Liens, Security Interests, and Superpriority Claim ("Final DIP Financing Order"; ECF No. 125), and in connection therewith, the Debtor and Heidi Caroline Poscher ("DIP Lender") entered into the Amended and Restated Promissory Note referenced therein ("First

Amended DIP Note", the form of which was filed at ECF No. 123), pursuant to which the Debtor was authorized to borrow up to $400,000 ("Initial DIP Borrowing").

B. On July 27, 2026, the Court entered its Order Granting Debtor's Motion for Authority to Increase the Amount of its Post-Petition Financing ("Amended DIP Financing Order"; ECF No. 153), in connection therewith, the Debtor and DIP Lender entered into the Second Amended and Restated Promissory Note referenced therein ("Second Amended DIP Note", the form of which filed on July 27, 2026 as one of the Additional Exhibits to the Supplement[1] (ECF No. 152), pursuant to which the Debtor was authorized to borrow an additional $250,000 ("First Amended DIP Borrowing").

C. The Debtor has an immediate and critical need to obtain additional debtor-in-possession financing in the amount of $135,000, to continue to provide interest-only payments to County National Bank ("CNB"), Washtenaw County and/or the City of Ann Arbor, The Albert M. Higley Co., LLC ("Higley") and payment of U.S. Trustee fees, in order to permit the Debtor to comply with the provisions of Section 362(d)(3) of the Bankruptcy Code.

D. The form of the Debtor's Third Amended and Restated DIP Note ("Third Amended DIP Note") was filed on ______, 2026 as Exhibit D to the

---

[1] Any capitalized terms not otherwise defined herein shall have the meaning ascribed to them in the Second DIP Increase Motion.

Second DIP Increase Motion (ECF No. ____) and it reflects an increase in the First Amended DIP Borrowing from $650,000 to $785,000.

E. The Debtor is unable to obtain financing on more favorable terms from sources other than the DIP Lender under the Third Amended DIP Note and is unable to obtain adequate unsecured credit allowable under section 503(b)(1) of the Bankruptcy Code as an administrative expense.

F. The Debtor is unable to obtain secured credit without the Debtor granting to the DIP Lender a superpriority claim and the DIP Liens (as defined herein) under the terms and conditions set forth in this Order and in the Third Amended DIP Note.

G. The terms of the Third Amended DIP Note are objectively fair and reasonable, and the obligations set forth therein constitute reasonably equivalent value and fair consideration.

H. The Third Amended DIP Note represents a reasonable loan arrangement between the Debtor and the DIP Lender.

I. Absent granting the relief set forth in this Order, the Debtor's estate will be immediately and irreparably harmed. Delivery of the Third Amended DIP Note in accordance with this Order is in the best interests of the Debtor's estate.

NOW, THEREFORE, IT IS HEREBY ORDERED that:

1. The Second DIP Increase Motion is granted in accordance with the terms of this Order.

2. The Debtor is authorized to increase the Amended DIP Borrowing from $650,000 to $785,000 pursuant to the terms of the Third Amended DIP Note, which borrowing shall be used only for payment of interest payments to CNB, Washtenaw County and/or City of Ann Arbor Real Estate Taxes, Higley and payment of U.S. Trustee fees as set forth in the Second Amended Budget attached as Exhibit B to the Second DIP Increase Motion ("Second Amended Budget").

3. The Debtor is authorized to execute and deliver the Third Amended DIP Note.

4. Upon the Debtor's execution and delivery of the Third Amended DIP Note, the Third Amended DIP Note and the obligations set forth therein shall constitute valid, binding and unavoidable obligations of the Debtor, enforceable against Debtor in accordance with the terms thereof and of this Order.

5. Pursuant to section 364(c)(1) of the Bankruptcy Code, except as set forth in paragraph 17 below, and only to the extent of the amount that the Debtor borrows under the Third Amended DIP Note pursuant to this Order, the DIP Lender shall have an allowed claim against the Debtor with priority over any and all

administrative expenses of the kind specified in sections 503(b) and 507(b) of the Bankruptcy Code.

6. As security for the amount that the Debtor borrows under the Third Amended DIP Note pursuant to this Order, effective and perfected upon entry of this Order (and without the necessity of filing a financing statement or recording any document), except as set forth in paragraph 17 below: (i) pursuant to section 364(c)(2) of the Bankruptcy Code, the DIP Lender is granted a lien on all property of the Debtor's estate that is not otherwise subject to a lien, and (ii) pursuant to section 364(c)(3) of the Bankruptcy Code, the DIP Lender is granted a junior lien on all property of the Debtor's estate that is subject to a lien.

7. In all instances, the liens granted to the DIP Lender pursuant to this Order are subject to existing mortgage liens in favor of County National Bank, Prentice Partners of Ann Arbor, LLC, and Brownstone Realty Advisors, LLC, and construction liens (unless duplicative or subsequently disallowed, in whole or in part, by this Court or another court of competent jurisdiction) in favor of Synecdoche Design Studio LLC, Higley, Building Decommission Services, LLC (d/b/a BDS Environmental), Industrial Fence & Landscaping, and Blue Star, Inc., SmithGroup, Inc. and Permitted Third Party Liens[2] (all liens and security interests granted to the

[2] "Permitted Third Party Liens" shall mean any liens that are senior by operation of law (including liens securing the payment of real property taxes and any such liens that are perfected subsequent to the Petition Date as permitted by Bankruptcy Code

DIP Lender pursuant to this Order and the Second Amended DIP Note are collectively, the “DIP Liens”).

8. All such security interests provided in this Order shall be created and perfected automatically pursuant to this Order. Notwithstanding the foregoing, the DIP Lender shall not have any lien or security interest in any property of the Debtor as to which the granting of a lien or security interest in such assets would be prohibited by contract, covenant, or applicable law.

9. A certified copy of this Order may, in the discretion of the DIP Lender, be filed with or recorded in filing or recording offices, and all filing offices are hereby authorized to accept such certified copy of this Order for filing and recording. For the avoidance of doubt, the automatic stay of section 362(a) of the Bankruptcy Code shall be modified to the extent necessary to permit the DIP Lender to take all actions, as applicable, referenced in this paragraph.

10. In the event of any of the following, the DIP Lender may request the Court’s determination that such occurrence is an “Event of Default” and seek appropriate remedies for same: (i) an order converting or dismissing this Bankruptcy Case; (ii) an order appointing a chapter 11 trustee in this Bankruptcy Case, without the consent of the DIP Lender; or (iii) an order appointing an examiner with enlarged powers in this Bankruptcy Case.

---

Section 546(b)).

11. Pursuant to section 364(e) of the Bankruptcy Code, if any or all of the provisions of this Order are hereafter reversed or modified on appeal then, absent a stay pending appeal, such reversal or modification shall not affect (i) the validity of any of the Debtor's obligations to the DIP Lender incurred prior to the pendency of the appeal or (ii) the validity or enforceability of any lien or priority authorized or created by this Order with respect thereto.

12. The additional amounts to be loaned by the DIP Lender shall only be used in accordance with the terms of Third Amended DIP Note, the Second Amended Budget, and this Order.

13. All obligations under the Third Amended DIP Note shall be immediately due and payable upon (i) an Event of Default, or (ii) as set forth in the Third Amended DIP Note.

14. All rights of the DIP Lender under this Order are subject to the DIP Lender's contractual obligations to CNB, including, without limitation, the DIP Lender's obligations under Section 11 of that certain Commercial Guaranty dated September 7, 2023.

15. This Court shall retain jurisdiction to enforce this Order according to its terms. In the event of any inconsistency between the provisions of this Order, the Second DIP Increase Motion, the Third Amended DIP Note, the Final DIP Financing

Order (ECF No. 125), and/or the Amended DIP Financing Order (ECF No. 153), the provisions of this Order shall govern.

16. This Order shall be immediately effective and enforceable upon its entry.

17. Notwithstanding anything to the contrary in this Order, or in the Third Amended DIP Note, or in any other document or instrument whatsoever, any security interest or lien granted to the DIP Lender ***excludes*** (i) any claims pursuant to Sections 502(d), 544, 545, 547, 548, 549, 550, 551, or 553 of the Bankruptcy Code ("Avoidance Claims"), (ii) any proceeds or property recovered in connection with the successful prosecution or settlement of any of the Avoidance Claims ("Avoidance Proceeds"), (iii) any intercompany claims (and the proceeds thereof), and (iv) any claims against the estate of Margaret Poscher, Prentice Partners of Ann Arbor, LLC, or any entity or estate in which Heidi Caroline Poscher has a direct or indirect interest (and the proceeds thereof), and no superpriority claim, administrative claim, or other priority claim under this Order shall be payable from or have recourse to any of the foregoing.

# EXHIBIT B

## Second Amended Budget

**Second Amended Budget of South Town by 4M, LLC**
**April 1, 2026-September 30, 2026**

| Expense | April | May | June | July | August | September | Total |
|---|---|---|---|---|---|---|---|
| Interest Payments to CNB (estimated) | $113,320.62 | $117,097.98 | $113,320.62 | $117,097.98 | $117,097.98 | $113,320.62 | $691,255.80 |
| UST Quarterly Fee | $350.00 | — | — | — | $350.00 | — | $700.00 |
| Interest City of Ann Arbor (taxes)[1] | $8,009.84 | $1,601.97 | $1,601.97 | $1,601.97 | $1,601.97 | $1,601.97 | $16,019.69 |
| Interest to Higley | $4,306.42 | $4,306.42 | $4,306.42 | $4,306.42 | $4,306.42 | $4,306.42 | $25,838.52 |
| Monthly Total | $125,986.88 | $123,006.37 | $119,229.01 | $123,006.37 | $123,356.37 | $119,229.01 | $733,814.01 |

[1] Tax debt $160,196.86. Four percent late charge equals $6,407.87. Interest at one percent per month equals $1,601.97.

**EXHIBIT C**

**Poscher Declaration**

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| In re: | Case No. 26-40805-lsg |
| South Town by 4M LLC, | Chapter 11 |
| Debtor. | Hon. Lisa S. Gretchko |

________________________/

**DECLARATION OF HEIDI POSCHER,**
**RESPONSIBLE PERSON FOR DEBTOR SOUTH TOWN BY 4M LLC**

I, **HEIDI CAROLINE POSCHER**, hereby declare:

1. I am over the age of 18 and competent to testify to these facts.

2. I am the Personal Representative of the Estate of the Debtor's sole Member—Margaret Poscher (Deceased)—and the responsible person for the Debtor.

3. Each of the statements contained in this declaration is based upon my personal knowledge and, if called as a witness, I could and would competently testify.

4. All of the facts set forth in the Debtor's *Second Motion for Entry of an Order Authorizing the Debtor to Increase the Amount of Its Post-Petition Financing* are true and accurate.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Heidi Caroline Poscher
Responsible Person of the Debtor

# EXHIBIT D

## Third Amended DIP Note

**THIRD AMENDED AND RESTATED**
**PROMISSORY NOTE**[1]

Dated: August ___, 2026

**FOR VALUE RECEIVED, South Town by 4M LLC** ("Borrower"), Debtor in Chapter 11 Case No. 26-40805-lsg in the U.S. Bankruptcy Court for the Eastern District of Michigan (the "Chapter 11 Case") promises to pay to the order of **Heidi Caroline Poscher** ("Lender") on the Maturity Date (as defined below) at 1919 S. Industrial Hwy, Ann Arbor, MI 48104 or at such other place as Lender may designate in writing, the principal sum equal to Seven Hundred Eighty-Five Thousand Dollars ($785,000.00) (the "Debt") or so much as has been advanced by Lender and not repaid pursuant to this Promissory Note (the "Note"), plus interest as hereinafter provided, in lawful money of the United States. This Note amends, restates, and includes all sums authorized and subject to (i) the Promissory Note (ECF No. 103 in the Chapter 11 Case) entered into by and between Borrower and Lender pursuant to the *Interim Order (A) Authorizing the Debtor to Obtain Post-Petition Secured Financing; and (B) Granting Liens, Security Interests, and Superpriority Claim* (ECF No. 105 in the Chapter 11 Case), (ii) the Promissory Note (ECF No. 123 in the Chapter 11 Case) entered into by and between Borrower and Lender Pursuant to the *Final Order (A) Authorizing the Debtor to Obtain Post-Petition Secured Financing; and (B) Granting Liens, Security Interests, and Superpriority Claim* (ECF No. 125 in the Chapter 11 Case), and (iii) the Promissory Note (Exhibit C to the Supplement at ECF No. 152 in the Chapter 11 Case) entered into by and between Borrower and Lender Pursuant to the *Order Granting Debtor's Motion for Authority to Increase the Amount of Its Post-Petition Financing* (ECF No. 153 in the Chapter 11 Case).

Subject to the terms of the Second Amended DIP Financing Order, this Note shall be accorded super-priority administrative expense status in the Chapter 11 Case, pursuant to Bankruptcy Code Section 364(c)(1), and shall be secured by a lien on Borrower's property that is not otherwise subject to a lien, pursuant to Bankruptcy Code Section 364(c)(2), and by a junior lien on Borrower's property that is subject to a lien, in accordance with Bankruptcy Code Section 364(c)(3).

All funds advanced must be used in accordance with the Second Amended DIP Financing Order approving this Note and the debtor-in-possession financing from Lender to Borrower only for payment of interest payments to County National Bank, the City of Ann Arbor and/or Washtenaw County Treasurer (for real estate taxes), The Albert M. Higley Co., LLC ("Higley") and payment of U.S. Trustee fees as set forth in the Second Amended Budget (as defined in the Second Amended DIP Financing Order).

The unpaid principal balance outstanding from time to time under this Note shall bear

[1] Capitalized terms used but not otherwise defined herein have the meanings given to such terms in the *Order Granting Debtor's Second Motion for Authority to Increase the Amount of Its Post-Petition Financing* (ECF No. ____ in the Chapter 11 Case (the "Second Amended DIP Financing Order").

interest at seven percent (7%) per annum. Interest shall be calculated on the basis of a 360 day year for the actual number of days elapsed. In the event of default, the "Default Rate" shall be nine percent (9%) per annum.

The unpaid principal balance and all accrued interest thereon shall be due and payable in full upon the earlier of (i) the effective date of Debtor's confirmed Chapter 11 Plan in the Bankruptcy Case, or (ii) the later of (a) 30 days after the expiration of Debtor's exclusivity and solicitation periods and (b) the date that is one hundred twenty (120) days after the entry of the Second Amended DIP Financing Order (collectively, the "Maturity Date"). All rights of Lender under this Note are subject to Lender's contractual obligations to County National Bank, including without limitations, Lender's obligations under Section 11 of that certain Commercial Guaranty dated September 7, 2023. All payments to Lender under this Note will be held in trust for, and paid to, County National Bank unless County National Bank has been fully paid.

Borrower may prepay all or any portion of the indebtedness outstanding hereunder at any time, without premium or penalty.

Nothing herein contained, nor any transaction relating thereto, or hereto, shall be construed or operate to require Borrower to pay, or be charged, interest at a greater rate than the maximum allowed by the applicable law relating to this Note. Should any interest or other charges, charged, paid or payable by Borrower in connection with this Note, or any other document delivered in connection herewith, result in the charging, compensation, payment or earning of interest in excess of the maximum allowed by the applicable law as aforesaid, then any and all such excess shall be and the same is hereby waived by the holder, and any and all such excess paid shall be automatically credited against and in reduction of the principal due under this Note.

If any Event of Default (as defined in the Second Amended DIP Financing Order) occurs under the Second Amended DIP Financing Order, it shall also constitute an "Event of Default" under this Note.

Borrower hereby waives presentment for payment, demand, notice of non-payment, notice of protest and protest of this Note, diligence in collection or bringing suit.

Neither Borrower nor Lender shall assign their respective rights or obligations under this Note (except the assignment of Lender's rights to County National Bank as stated above).

This Note is to be construed in accordance with the internal laws (but not the law of conflicts) of the State of Michigan.

**IN RECOGNITION OF THE HIGHER COSTS AND DELAY WHICH MAY RESULT FROM A JURY TRIAL, BORROWER AND LENDER WAIVE ANY RIGHT TO TRIAL BY JURY OF ANY CLAIM, DEMAND, ACTION OR CAUSE OF ACTION (A) ARISING HEREUNDER OR IN CONNECTION WITH THE OBLIGATIONS, OR (B) IN ANY WAY CONNECTED WITH OR RELATED OR INCIDENTAL TO THE DEALINGS OF THE PARTIES HERETO OR ANY OF THEM WITH RESPECT HERETO, IN EACH CASE WHETHER NOW EXISTING OR HEREAFTER ARISING, AND WHETHER SOUNDING IN CONTRACT OR TORT OR OTHERWISE; AND BORROWER**

**FURTHER WAIVES ANY RIGHT TO CONSOLIDATE ANY SUCH ACTION IN WHICH A JURY TRIAL HAS BEEN WAIVED WITH ANY OTHER ACTION IN WHICH A JURY TRIAL CANNOT BE OR HAS NOT BEEN WAIVED; AND BORROWER HEREBY AGREES AND CONSENTS THAT ANY SUCH CLAIM, DEMAND, ACTION OR CAUSE OF ACTION SHALL BE DECIDED BY COURT TRIAL WITHOUT A JURY, AND THAT ANY PARTY HERETO MAY FILE AN ORIGINAL COPY OF THIS NOTE WITH ANY COURT AS WRITTEN EVIDENCE OF THE CONSENT OF BORROWER TO THE WAIVER OF ITS RIGHT TO TRIAL BY JURY.**

“**BORROWER”**

**South Town by 4M LLC**

By: ____________________________

Its: ____________________________

Address: ________________________

_________________________________

**ACCEPTED AND AGREED TO:**
**“LENDER”**

_________________________________
Heidi Caroline Poscher